# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-3177

———————

Michael Negele,

        Petitioner,

v.

John Ashcroft, Attorney General
of the United States; Thomas Ridge,
Director of Homeland Security,

        Respondents.

\* Petition for Review of
\* an Order of the Board of
\* Immigration Appeals.

———————

Submitted: April 13, 2004
Filed: June 1, 2004

———————

Before WOLLMAN, HANSEN, and BYE, Circuit Judges.

———————

BYE, Circuit Judge.

Michael Negele appeals the decision of the Board of Immigration Appeals (BIA) dismissing his appeal of an order directing his removal to Romania pursuant to the Holtzman Amendment, 8 U.S.C. § 1182(a)(3)(E)(i). This Amendment mandates the removal of any person who, in association with Nazi Germany or its allies during World War II, ordered, incited, assisted, or otherwise participated in the persecution of any person because of race, religion, national origin, or political opinion. We affirm.

I

A.    Factual Background[1]

Negele, ethnically German, was born in Romania in 1920.  During World War II, Negele served in the Death's Head unit of the Waffen *Schutzstaffel* (SS), which was responsible for operating and guarding concentration camps.  In this capacity, Negele guarded civilian prisoners at the Sachsenhausen concentration camp and at Theresienstadt, an internment camp that held Jews and other prisoners awaiting transport to the death camps.  Specifically, Negele policed the exterior of these camps with his guard dog, preventing prisoner escapes.

Following the War, Negele obtained United States citizenship by concealing his wartime service in the SS.  He now resides in St. Peters, Missouri.

B.    Procedural Background

In 1997, the government filed a complaint seeking to revoke Negele's citizenship, which ultimately proved to be successful.  See United States v. Negele, 222 F.3d 443, 447-48 (8th Cir. 2000).

On March 5, 2001, the government filed a Notice to Appear (NTA) charging that Negele was subject to removal pursuant to the Holtzman Amendment, 8 U.S.C. § 1182(a)(3)(E)(i).  The NTA alleged Negele ordered, incited, assisted, or otherwise participated in the persecution of persons because of race, religion, national origin or political opinion between March 23, 1933, and May 8, 1945, under the direction of

_____

[1]For purposes of this opinion, we provide only a general description of the facts.  A more thorough discussion of the facts may be reviewed in the panel opinion in the denaturalization proceedings, United States v. Negele, 222 F.3d 443, 445-46 (2000).

or in association with the Nazi government of Germany. Immigration Judge Bruce W. Solow entered a decision and order directing Negele be removed to Romania. This decision was based on the evidence presented by the government at Negele's denaturalization trial. On August 28, 2003, the BIA dismissed Negele's appeal of the immigration judge's order. This appeal followed.

## II

This court reviews for substantial evidence the factual findings underlying the BIA's denial of an appeal. Regalado-Garcia v. INS, 305 F.3d 784, 787 (8th Cir. 2002). Those findings must be upheld if they are supported by "reasonable, substantial, and probative evidence, based on the record as a whole." Valioukevitch v. INS, 251 F.3d 747, 749 (8th Cir. 2001). We review the BIA's legal determinations de novo, "according substantial deference to the [BIA's] interpretation of the statutes and regulations it administers." Regalado-Garcia, 305 F.3d at 787 (citing Tang v. INS, 223 F.3d 713, 718 (8th Cir. 2000)).

The government is required to establish by clear and convincing evidence Negele is subject to removal. 8 U.S.C. § 1229a(c)(3)(A). Title 8 U.S.C. § 1227(a) provides an alien "shall . . . be removed" if he falls within one or more of a specified class of deportable aliens. The NTA in this case charged that Negele was removable under 8 U.S.C. § 1227(a)(4)(D), which mandates the removal of any alien described in clause (i) or (ii) of 8 U.S.C. § 1182(a)(3)(E), the Holtzman Amendment.

The Holtzman Amendment states at subsection (i):

Any alien who, during the period beginning on March 23, 1933, and ending on May 8, 1945, under the direction of, or in association with –

(I) the Nazi government of Germany,

(II) any government in any area occupied by the military forces of the Nazi government of Germany,

(III) any government established with the assistance or cooperation of the Nazi government of Germany, or

(IV) any government which was an ally of the Nazi government of Germany,

> ordered, incited, assisted, or otherwise participated in the persecution of any person because of race, religion, national origin, or political opinion is inadmissible [to the United States].

Congress enacted the Holtzman Amendment in 1978 to ensure "that the United States is not a haven for individuals who assisted the Nazis in the brutal persecution and murder of millions of people." Schellong v. INS, 805 F.2d 655, 662 (7th Cir. 1986).

It is undisputed both Sachsenhausen and Theresienstadt were places of persecution where Jewish civilians and political prisoners were forcibly confined under hideous and often deadly conditions solely because of their race or religion. Thus, the primary question in this case is whether Negele's dog-handling and guard duties constitute assistance in persecution under the terms of the Holtzman Amendment.

Negele contends his duties were entirely limited to dog-handling and therefore he does not fit the description of persons who are intended to be deported under the Holtzman Amendment. The crux of his position is: because the record does not reflect he ever shot at prisoners or took any other direct action to persecute them he did not participate in persecution under the terms of the Holtzman Amendment. We disagree, and believe the BIA properly found the documentary evidence and

testimony from the denaturalization trial established that as an armed ghetto and concentration camp guard for the SS Death's Head Battalion Negele assisted in Nazi persecution. Therefore, he is subject to removal under the Holtzman Amendment.

Although the Eighth Circuit has not previously addressed the specific issue presented in this case, our conclusion is supported by the overwhelming weight of authority emanating from other circuit courts which have addressed the issue. See Tittjung v. Reno, 199 F.3d 393, 398 (7th Cir. 1999) (concluding Tittjung's service as an armed SS Death's Head Battalion concentration camp guard constituted assisting in persecution within the meaning of the Holtzman Amendment); Hammer v. INS, 195 F.3d 836, 843 (6th Cir. 1999) (upholding a removal order against a former SS Death's Head Battalion guard); Kalejs v. INS, 10 F.3d 441, 444 (7th Cir. 1993) ("The Holtzman Amendment's non-criminal provision thus makes *assistance* in persecution an independent basis for deportation, and assistance may be inferred from the general nature of the person's role in the war") (emphasis in original); Kairys v. INS, 981 F.2d 937, 943 (7th Cir. 1992) (stating that as effective aiders and abettors of the [Nazi] conspiracy the armed guards are subject to deportation under the Holtzman Amendment); Kulle v. INS, 825 F.2d 1188, 1192 (7th Cir. 1987) ("Because the statute authorizes deportation of anyone who 'assisted' in persecution, personal involvement in atrocities need not be proven."); Schellong, 805 F.2d at 661 ("Nazi concentration camps were places of persecution; individuals who, armed with guns, held the prisoners captive . . . with threats of death or capital punishment cannot deny that they aided the Nazis in their program of racial, political and religious oppression.").

In support of his position the Holtzman Amendment requires particularized proof of individual atrocities by him, or evidence that he volunteered for service as an SS Death's Head Battalion Guard, Negele primarily relies on the case of Petkiewytsch v. INS, 945 F.2d 871 (6th Cir. 1991). In Petkiewytsch, the Sixth Circuit

decided service at the German labor camp did not satisfy the requirements for deportability under the Holtzman Amendment.

In Petkiewytsch the individual was forced to work as a civilian labor guard under threat of imprisonment or execution (and was actually imprisoned for failing to adequately perform his duties); served at the least repressive type of Nazi camp; served reluctantly and at a young age and had not engaged in any persecution of a particular person. Id. at 880-81. Considering these mitigating factors, the court reasoned such language included in the legislative history of the Holtzman Amendment might require active participation in persecution going beyond assistance. Id. at 880.

Petkiewytsch does not control our decision in this case, because, among other reasons, it is limited to the unique mitigating facts of the case. In the later case of Hammer v. INS, 195 F.3d 836 (6th Cir. 1999), the Sixth Circuit concluded Hammer, a Death's Head Battalion guard, could be removed under the Holtzman Amendment. The court explained:

> Petkiewytsch thus appears to stand for the proposition that some forms of 'assistance' to the Nazi regime (such as membership, without more, in an organization which cooperated with the Nazis) may be too attenuated to be considered 'under the direction of, or in association with' the Nazi government. We do not believe that Petkiewytsch compels the conclusion that 'assistance' to the Nazi regime can never be sufficient for deportation under the Holtzman Amendment, because such an interpretation would be squarely at odds with the text of the statute.

Id. at 844.

It should also be noted the mitigating factors in Petkiewytsch are not present in this case. The district court in the denaturalization proceedings specifically

-6-

rejected Negele's claims of being drafted into the Waffen SS as unbelievable, and found Negele served voluntarily as an SS Death's Head Battalion guard.

We conclude that by impeding prisoners' escape through his presence as an armed SS Death's Head Battalion Guard, Negele was actively and personally involved in persecution. By guarding the perimeters of the camps with a trained guard dog to ensure prisoners did not escape from life-threatening conditions, Negele contributed to the persecution which occurred in these facilities. There is little doubt the prisoners within the facilities Negele patrolled with his dog (trained to "tear to pieces anyone else except the trainer") would have considered him as part of the Nazi machine which kept them at death's gate.

### III

We deny Negele's petition for review and affirm the opinion and order of the BIA.

_____