UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

─────────────

No. 05-1002
(A71-792-749)

─────────────


LUIS A. HIGUIT,

                                                    Petitioner,

        versus

ALBERTO R. GONZALES, Attorney General,

                                                    Respondent.



─────────────

O R D E R

─────────────



        The Court amends its opinion filed January 3, 2006, by

replacing the word "Gonzalez" with the word "Gonzales" at lines

4, 17, and 18 of the second paragraph on page 4; at line 4 of the

second full paragraph on page 5; and at line 10 of the second

full paragraph on page 6.


                                For the Court

                                /s/ Patricia S. Connor

                                _____
                                          Clerk

# PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

LUIS A. HIGUIT,

Petitioner,

v.

ALBERTO R. GONZALES, Attorney
General,

Respondent.

No. 05-1002

On Petition for Review of a Final Order of
the Board of Immigration Appeals.
(A71-792-749)

Argued: December 1, 2005

Decided: January 3, 2006

Before WIDENER, WILKINSON, and TRAXLER, Circuit Judges.

Dismissed in part and affirmed in part by published opinion. Judge
Wilkinson wrote the opinion, in which Judge Widener and Judge
Traxler joined.

## COUNSEL

**ARGUED:** Arnedo Silvano Valera, Fairfax, Virginia, for Petitioner.
Bryan Stuart Beier, UNITED STATES DEPARTMENT OF JUS-
TICE, Office of Immigration Litigation, Washington, D.C., for
Respondent. **ON BRIEF:** Anna Mills Wagoner, United States Attor-
ney, John W. Stone, Jr., Assistant United States Attorney, OFFICE
OF THE UNITED STATES ATTORNEY, Greensboro, North Caro-
lina, for Respondent.

**OPINION**

WILKINSON, Circuit Judge:

Luis A. Higuit challenges a Board of Immigration Appeals decision denying adjustment of status, asylum, and withholding of removal. We hold that because Higuit raises no constitutional claim or question of law on appeal, we lack subject matter jurisdiction to review his denial of adjustment of status. REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a)(1)(A)(iii), 119 Stat. 231, 310 (to be codified as 8 U.S.C. § 1252(a)(2)(D)). With respect to asylum and withholding of removal, the immigration judge properly determined that Higuit was ineligible for relief because he had engaged in persecution as an intelligence operative for the Marcos regime in the Philippines. We therefore dismiss in part and affirm in part.

I.

Petitioner Luis Higuit is a native of the Philippines who entered the United States in May 1990 on a nonimmigrant visa. Higuit overstayed his visa and the Immigration and Naturalization Service (now the Department of Homeland Security) sought his removal. *See* 8 U.S.C.A. § 1227(a)(1)(B) (West 2005). Higuit acknowledged removability, but applied for relief on the basis of asylum and withholding of removal under the Immigration and Nationality Act, 8 U.S.C.A. §§ 1158(a)(1), 1231(b)(3), and the Convention Against Torture (CAT), *see* 8 C.F.R. § 208.16(c) (2005).

In a hearing on October 15, 1999, the immigration judge (IJ) denied these requests for relief. According to the IJ, Higuit was ineligible for asylum and withholding of removal because, inter alia, the relevant statutory and regulatory provisions foreclosed such relief for any alien who "ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1158(b)(2)(A)(i); *see also id.* § 1231(b)(3)(B)(i); 8 C.F.R. § 1208.16(d)(2).

The IJ found that Higuit met this definition because of his approximately ten years of service as an intelligence officer in the repressive

Ferdinand Marcos government in the Philippines. Through covert information-gathering, infiltration, and surveillance techniques, Higuit provided his superiors with intelligence on the leftist New People's Army (NPA) and other anti-Marcos communist groups. His asylum application stated that "[b]ecause of my loyalty to the Marcos group and to the Military Establishment, I hurt so many people" and ruined careers, and furthermore, that individuals he investigated were imprisoned and killed. Higuit testified to the same. The IJ determined that while Higuit had never personally inflicted physical harm, he was ineligible for asylum and withholding of removal because his intelligence activities led to the persecution of NPA members and other anti-government dissidents, including individuals who were only suspected of maintaining ties to communist organizations. The IJ did, however, grant Higuit's application for voluntary departure.

Higuit sought review in the Board of Immigration Appeals (BIA), but during the pendency of his appeal requested a remand to the IJ for consideration of a discretionary adjustment of status, in light of his receipt of an approved Alien Worker petition. *See* 8 U.S.C. § 1255(i). The BIA remanded the case to the IJ for further proceedings. The parties agreed that Higuit was statutorily eligible for an adjustment of status, and that the determinative question was whether he deserved a favorable exercise of discretion. *See Elkins v. Moreno*, 435 U.S. 647, 667-68 (1978) (describing the balancing of equities in adjustment of status determinations).

Higuit submitted evidence that he was married, had a child born in the United States, owned property in this country, and was active in a church organization. On July 31, 2003, the IJ determined that these positive factors did not tip the balance in favor of Higuit, due to his persecution activities in the Philippines. The IJ noted that while an alien who engaged in persecution was not barred from receiving an adjustment of status, Higuit's estimable conduct in the United States did not outweigh his participation in the Marcos regime.

Higuit renewed his appeal to the BIA, which adopted and affirmed the IJ's decisions denying adjustment of status, asylum, and withholding of removal. Higuit filed a timely appeal.

## II.

We first address the denial of adjustment of status. An adjustment of status is a discretionary decision committed to the Attorney General. *See* 8 U.S.C.A. § 1255(i); *see also Okpa v. INS*, 266 F.3d 313, 315 (4th Cir. 2001) (per curiam). Notwithstanding an alien's unlawful immigration classification, the Attorney General may adjust an alien's status to that of a lawful permanent resident if, inter alia, the alien is physically present in the United States, is admissible for permanent residence, and is eligible to receive an immigrant visa, which must be immediately available. *See* 8 U.S.C.A. § 1255(i). Prior to May 2005, it was clear that we lacked jurisdiction to review such a determination. At that time, 8 U.S.C. § 1252(a)(2)(B)(i) (2000) provided that courts do not have jurisdiction to review "any judgment regarding the granting of relief under section . . . 1255 [adjustment of status]." *See also Velasquez-Gabriel v. Crocetti*, 263 F.3d 102, 104 n.1 (4th Cir. 2001).

On May 11, 2005, however, Congress enacted the REAL ID Act. REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231, 302-23. The relevant provisions of the Act apply retroactively, and as a result to this appeal. § 106(b), 119 Stat. at 311; *Papageorgiou v. Gonzales*, 413 F.3d 356, 358 (3d Cir. 2005). As applicable here, the REAL ID Act added a new subsection (D) to the judicial review provisions in the Immigration and Nationality Act. Subsection (D) states: "Nothing in subparagraph (B) . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D). Subsection (B)'s jurisdiction-stripping default remained unchanged, but was revised to indicate that courts lacked jurisdiction "except as provided in subparagraph (D)." *Id.* § 1252(a)(2)(B). In effect, therefore, the REAL ID Act confers upon courts of appeal a narrowly circumscribed jurisdiction to resolve constitutional claims or questions of law raised by aliens seeking discretionary relief. *See Obioha v. Gonzales*, No. 04-2253, slip op. at 4 n.3 (4th Cir. Dec. 8, 2005); *Hamdan v. Gonzales*, 425 F.3d 1051, 1057 (7th Cir. 2005).

Under this framework, we lack jurisdiction to review the IJ's denial of adjustment of status. Higuit does not advance any constitutional

claims. Nor is there any question that he meets the statutory prerequisites for an adjustment of status, *see* 8 U.S.C.A. § 1255(i), as both parties agree that he has. Instead, Higuit submits that he has raised a question of law because the IJ determined that the persecution he carried out in the Philippines outweighed his commendable conduct in the United States. Specifically, he contends that he was denied adjustment of status because the IJ had already determined that he was barred from receiving asylum or withholding of removal on the basis of his persecution activities.

This does not present a question of law. In making the discretionary adjustment of status determination, the IJ balanced Higuit's positive and negative attributes and did not rule in Higuit's favor. The IJ relied upon Higuit's participation in the Marcos regime, but specifically noted that Higuit was not precluded from receiving an adjustment of status because he had engaged in persecution activities that would bar asylum and withholding of removal. Whether Higuit's actions in the Philippines met the statutory and regulatory definitions of "persecution" was therefore neither relevant to nor dispositive of the IJ's ultimate adjustment of status determination, which was an equitable determination based on factual findings rather than a question of law.

"[T]he REAL ID Act reflects a congressional intent to preserve [a] broad effort to streamline immigration proceedings and to expedite removal while restoring judicial review of constitutional and legal issues." *Grass v. Gonzales*, 418 F.3d 876, 879 (8th Cir. 2005). Were Higuit correct that he has presented a question of law, almost every decision denying discretionary relief would henceforth be subject to judicial review. We are not free to convert every immigration case into a question of law, and thereby undermine Congress's decision to grant limited jurisdiction over matters committed in the first instance to the sound discretion of the Executive. A constitutional claim or question of law may be embedded in a denial of adjustment of status such that it presents a proper issue for appellate court resolution, but that is plainly not the situation here.

### III.

We now turn to the BIA's decision affirming the IJ's denial of asylum and withholding of removal. We have jurisdiction to consider

these orders, 8 U.S.C.A. § 1252(a)(1), (a)(2)(B)(ii), and review legal questions de novo, *Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 278 (4th Cir. 2004).

Congress has specifically instructed that aliens who have engaged in persecution are expressly ineligible for asylum or withholding of removal. *See Bah v. Ashcroft*, 341 F.3d 348, 351 (5th Cir. 2003) (per curiam). Asylum is unavailable where "the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1158(b)(2)(A)(i); *see also id.* § 1231(b)(3)(B)(i) (setting forth virtually identical persecution exception for withholding of removal under the Immigration and Nationality Act); 8 C.F.R. § 1208.16(d)(2) (same for withholding of removal under the CAT). If there is evidence that the alien engaged in persecution, he must prove by a preponderance of the evidence that he is not barred from relief on this ground. *See id.* §§ 208.13(a), 208.16(d)(2), 1208.16(d)(2); *see also Hernandez v. Reno*, 258 F.3d 806, 812 (8th Cir. 2001).

Higuit argues that he did not engage in persecution because in the course of his military intelligence-gathering activities, he never physically tortured or harmed any person. We do not believe the statutory language defines persecution so narrowly. Congress expressly precluded the relief he seeks for any alien who "ordered, incited, *assisted*, or *otherwise participated in*" persecution. 8 U.S.C.A. §§ 1158(b)(2)(A)(i), 1231(b)(3)(B)(i) (emphasis added). The text makes clear that while the commission of actual physical harm may be sufficient to bring an alien within the persecution exception, it is not necessary. *See Singh v. Gonzales*, 417 F.3d 736, 740 (7th Cir. 2005) (alien assisted or participated in persecution where he helped bring religious minorities into custody and was aware that they were physically abused). Our conclusion that persecution is not limited to physical harm finds support in the corpus of circuit law interpreting the identical language in the Holtzman Amendment, which denies relief to former Nazis who "ordered, incited, assisted, or otherwise participated in" persecution. 8 U.S.C.A. § 1182(a)(3)(E)(i); *see, e.g., Negele v. Ashcroft*, 368 F.3d 981, 983-84 (8th Cir. 2004) (actual participation in physical atrocities unnecessary for finding that alien engaged in persecution); *Naujalis v. INS*, 240 F.3d 642, 646 (7th Cir.

2001) (government need not show that alien "personally participated in the atrocities"); *Hammer v. INS*, 195 F.3d 836, 843 (6th Cir. 1999) (same).

In this case, the IJ determined Higuit was aware that his information-gathering and infiltration led to the torture, imprisonment, and death of NPA members and other political opponents, as well as individuals merely suspected of affiliation with these groups. This brutality was the result of the information Higuit covertly gathered and provided to his superiors over a period of approximately ten years. *See Singh*, 417 F.3d at 740 (length of involvement relevant to whether alien assisted or participated in persecution). Under these circumstances, the IJ properly determined that Higuit did assist or otherwise participate in persecution. While "a distinction must be made between genuine assistance in persecution and inconsequential association with persecutors," *id.* at 739, there can be no dispute over Higuit's personal culpability in this case.

## IV.

For the foregoing reasons, we dismiss the appeal in part and affirm the judgment of the BIA in part.

*DISMISSED IN PART AND AFFIRMED IN PART*