**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-1678**

RU LIN; SHANG CHENG LIN,

Petitioners,

versus

ALBERTO R. GONZALES, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals.  (A95-153-949; A95-153-950)

Argued:  March 15, 2006          Decided:  July 18, 2006

Before MICHAEL, KING, and GREGORY, Circuit Judges.

Petition for review denied by unpublished per curiam opinion.

**ARGUED:**  Gang Zhou, LAW OFFICES OF GANG ZHOU, ESQ., New York, New
York, for Petitioners. Thomas L. Holzman, UNITED STATES DEPARTMENT
OF JUSTICE, Office of Immigration Litigation, Civil Division,
Washington, D.C., for Respondent.  **ON BRIEF:**  Peter D. Keisler,
Assistant Attorney General, Civil Division, Donald E. Keener,
Deputy Director, UNITED STATES DEPARTMENT OF JUSTICE, Office of
Immigration Litigation, Civil Division, Washington, D.C., for
Respondent.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Ru Lin (Lin), a native and citizen of China, filed an application for asylum and other relief. An immigration judge (IJ) denied Lin's application on two alternative grounds: that Lin failed to prove by clear and convincing evidence that the application was timely filed and that Lin's testimony was not credible. The Board of Immigration Appeals (BIA) affirmed, and Lin petitions this court for review. Lin argues that the IJ violated her due process rights in determining that she had not proven the timeliness of her asylum application. Lin further argues that the IJ's adverse credibility determination is not supported by substantial evidence. We find no reversible error in the administrative proceedings and therefore deny Lin's petition for review.

I.

In September 2001 Lin submitted an application for asylum and withholding of removal under 8 U.S.C. §§ 1158(a)(1), 1231(b)(3) and for relief under the Convention Against Torture, see 8 C.F.R. § 208.16(c). She presented the following evidence at her December 2003 hearing.

Lin met her husband, Shang Cheng Lin, in China in late 1998. In November 1999 she learned that she was pregnant. On December 1, 1999, the couple married in an unofficial, traditional

2

Chinese ceremony. They were not able to obtain an official marriage certificate because they did not meet the legal age requirements to be married in China. After the couple was married, Lin began residing at the home of her in-laws. Lin and her husband later moved to the home of her in-laws' friend in Fuzhou City because they feared that local birth control authorities would discover Lin's pregnancy. In early January 2000 two birth control officers came to Lin's in-laws' residence and told the in-laws that they had discovered Lin's unofficial marriage. The officials further said that Lin must report to family planning authorities for the implantation of an intrauterine device (IUD). Lin's mother-in-law told the officials that Lin was still on her honeymoon but she would relay the instruction when Lin returned. In mid-March 2000 the authorities returned and, again not finding Lin there, told the in-laws that if Lin was pregnant without a legal marriage she should undergo an abortion.

Government officials finally discovered Lin and her husband at the house in Fuzhou City in June 2000 while conducting a household registration check. The officers entered the house and directed everyone to present their personal identification cards. When the officers saw that Lin did not belong to the household and was pregnant, they ordered her to come with them. She refused because she believed that she would have to undergo an abortion. The officials began to drag her, and her husband attempted to

3

intervene. The officials beat Lin's husband for obstructing official duties, causing his nose to bleed. The officials took Lin by car to the town security bureau.

After a few hours birth control officials took Lin from the security bureau to a hospital where they forced her to undergo an abortion. About a week after the abortion Lin was forcibly implanted with an IUD. Less than one year later, in April 2001, Lin discovered that she was pregnant again, "due to the missing of the IUD." J.A. 524. At that time she and her husband decided to leave China for the United States. They left China on April 20, 2001, and traveled to Toronto where they remained for nineteen days until entering the United States with the help of smugglers. Lin presented no proof of when she and her husband entered the United States, though she asserts that they entered on May 10, 2001.

Lin and her husband agreed to pay the smugglers $50,000 after their arrival in the United States. Lin worked with her husband at his uncle's restaurant in Washington, D.C., where she was paid $1,700 per month and her husband was paid $1,500 per month. (Lin and her husband resided in Washington, D.C., and New York City at various points during their stay in the United States, although it is unclear exactly when and for how long each resided in each city.) Although Lin worked for about one to two years, she did not state this employment on her asylum application form. Lin's husband testified at the hearing that in the two years they

4

had lived in the United States, they paid nearly all of the $50,000 debt owed to the smugglers. They "had some savings" that they used to repay the debt, J.A. 192, and they sent about $10,000 per year to China for the repayment. During this time, Lin's husband rented lodging in New York for $300 per month. He also bought a diamond ring worth several hundred dollars for Lin while they were in the United States.

About seven months after the Lins' arrival in the United States, in December 2001, Lin gave birth to a baby boy. When the boy was five months old he was sent to China to be cared for by Lin's mother. Lin explained that they sent the baby to China so that Lin could earn money and "provide [her] children a better future." J.A. 154.

Lin applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) in September 2001, a few months before she gave birth. In a notice dated October 31, 2001, the Immigration and Naturalization Service (INS) informed Lin that it would not grant her asylum application but that she could renew her application before an IJ. The INS subsequently initiated removal proceedings against Lin and issued a Notice to Appear (NTA) at a removal hearing. The NTA alleged that Lin entered the United States "on or about May 10, 2001." J.A. 545. At a hearing before an IJ in April 2002, Lin admitted the factual allegations in the NTA, conceding her removability.

However, she sought relief from removal by renewing her application for asylum, withholding of removal, and relief under the CAT. The IJ held an evidentiary hearing on Lin's application for relief on December 10, 2003. At the hearing Lin presented a certificate of abortion that was allegedly given to her after the forced abortion. Lin explained at the hearing that her mother-in-law attempted to authenticate the abortion certificate in China but Chinese officials refused to notarize the document. The IJ denied Lin's application upon finding, first, that she had not presented clear and convincing evidence that her application was timely filed and, second, that her testimony was not credible. Lin appealed the decision to the BIA, and on May 27, 2005, the BIA dismissed the appeal. This petition for review followed.

## II.

Lin argues that the IJ denied her due process in finding that she failed to present clear and convincing evidence that her application was filed within one year after her arrival in the United States. See 8 U.S.C. § 1158(a)(2)(B). In making this finding, the IJ cited reasons to disbelieve Lin's assertion that she arrived in the United States on May 10, 2001. Lin's husband testified that they had repaid nearly all of the $50,000 debt to the smugglers at a rate of about $10,000 per year, indicating that the Lins were in the United States before their alleged arrival

6

date of May 2001.  Furthermore, of all the documents submitted, none placed Lin outside the United States between September 2000 and May 2001.  Lin also provided no corroborating evidence of her presence in Canada prior to entering the United States.  Lin argues that she presented no such evidence at the hearing because the government had not previously raised the issue.  In other words, Lin contends that she had no notice that she would need to present evidence concerning the timeliness of her application.

A.

Lin's due process claim raises a threshold jurisdictional issue.  An alien applying for asylum must demonstrate "by clear and convincing evidence that the application [for asylum] has been filed within 1 year after the date of the alien's arrival in the United States."  8 U.S.C. § 1158(a)(2)(B).  The Immigration and Nationality Act (INA) limits judicial review of agency determinations as to whether the one-year filing requirement has been met:  "No court shall have jurisdiction to review any determination of the [BIA] under [this provision]."  § 1158(a)(3).  Until recently, courts of appeal have uniformly held that § 1158(a)(3) deprives them of jurisdiction to review BIA timeliness determinations such as this one.  See Chen v. U.S. Dep't of Justice, 434 F.3d 144, 151 (2d Cir. 2006) (collecting cases).  The REAL ID Act of 2005, however, added a new jurisdictional provision

7

to the INA that broadens judicial review. The new provision, which applies retroactively, states: "Nothing in . . . any . . . provision of this [Act] . . . which limits or eliminates judicial review[] shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a)(1)(A)(iii), 119 Stat. 302, 310 (codified at 8 U.S.C. § 1252(a)(2)(D)). The REAL ID Act thus confers upon courts of appeal a narrowly circumscribed jurisdiction to resolve constitutional claims or questions of law raised by aliens challenging a timeliness determination. See Higuit v. Gonzales, 433 F.3d 417, 419 (4th Cir. 2006).

Because Lin's challenge to the IJ's timeliness determination is a constitutional one, this court has jurisdiction to entertain her claim. As other courts have noted, the timeliness of an alien's asylum application is usually a question of fact. See Mehilli v. Gonzales, 433 F.3d 86, 93 (1st Cir. 2005). Accordingly, in most cases courts of appeal will not have jurisdiction to review a timeliness determination despite the REAL ID Act's jurisdiction-enhancing provision. In this case, however, Lin does not challenge the IJ's factual determination as to the timeliness of her application. Rather, she argues that the procedures used to assess her asylum claim unconstitutionally

8

denied her the opportunity to present evidence on the timeliness issue. This claim thus raises a constitutional question that we have jurisdiction to review.

B.

We turn then to the merits of Lin's due process claim. She argues that because the NTA alleges that she entered the United States on May 10, 2001, and because she conceded the truth of that factual allegation in an earlier hearing before the IJ, she did not have notice of the need to submit evidence of her entry date. Due process requires that an alien who faces removal be provided (1) notice of the charges against her, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard. United States v. El Shami, 434 F.3d 659, 665 (4th Cir. 2005). In order to prevail on a due process challenge to an asylum hearing, an alien must also demonstrate that she was prejudiced by the alleged due process violation. Rusu v. INS, 296 F.3d 316, 320 (4th Cir. 2002).

As an initial matter, we note that removal hearings often consist of two parts: determination of the alien's removability followed by consideration of any applications by the alien for discretionary relief from removal. Richard D. Steel, Steel on Immigration Law § 14:21 (2d ed. 2005). Whereas the burden of proof as to the first part, removability, rests generally with the

9

government, it is well-settled that the burden of proof as to the second part, discretionary relief from removal, rests with the alien. 8 U.S.C. § 1229a(c)(4). In cases such as this one, where removal proceedings are initiated by an asylum application and there is no dispute that an alien is removable, removability is often determined by the aliens' admission of the facts alleged in the NTA. Steel, supra, § 14.21. An alien will make such an admission so that the removal proceedings can move on to the real issue at hand: whether the alien is eligible for discretionary relief from removal. Id. Accordingly, early in the proceedings in this case, Lin admitted the facts alleged in the NTA and conceded her removability. This allowed the parties to focus on her application for discretionary relief, the main issue in her case.

We conclude that Lin had fair notice of the need to present evidence to prove that she met the one-year filing requirement. The statute governing asylum procedures unequivocally states that an alien is not eligible for asylum unless she "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of [her] arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). Any asylum applicant is thus put on notice that she bears the burden of proving her date of entry.

It is true that the NTA alleged that Lin entered the United States on or about May 10, 2001, and that Lin conceded the

10

truth of the facts alleged in the NTA at her initial hearing. But Lin's concession did not necessarily relieve her of her burden of proving her entry date for the purpose of her asylum application. The regulations governing removal proceedings are silent as to the evidentiary effect of an alien's concession. Although the regulations contemplate that parties will stipulate to certain facts in order to "simplify and organize the [removal] proceeding," 8 C.F.R. § 1003.21, there is no indication that Lin and the government entered into any stipulation here. In civil litigation,

> [a] requirement for evidence ceases to apply where the opponent, by express statement made for the purpose of trial, has (1) conceded the truth of a fact, (2) or, assented to a specific mode of evidencing it, (3) or, waived the introduction of a specific piece of evidence, (4) or, waived the prohibition or limited conditions of a specific rule of evidence.

22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5194 (1978 & Supp. 2005) (quoting Wigmore, Code of Evidence 542 (3d ed. 1942)). Using this rule for guidance, we doubt that Lin's admission relieved her of her burden of proving the timeliness of her asylum application. The concession relieved only her opponent (the government) of its burden to present evidence to establish her removability. Lin's concession did not mean, however, that the government (or the IJ) was bound to treat the alleged May 10, 2001, entry date as conclusive for the purpose of Lin's asylum application. Cf. 8A Charles Allen Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure

11

§ 2264 (2d ed. 1994) (explaining that although an admission made pursuant to Federal Rule of Civil Procedure 36 binds the party who made it, the admission does not bind the party who requested it). By way of comparison, if Lin and the government had instead entered into a stipulation regarding her entry date, she presumably would have been relieved of her burden because her opponent would have "waived the introduction of a specific piece of evidence." But because Lin and the government did not stipulate to her date of entry (that is, the government did not waive the introduction of evidence as to the timeliness of her asylum application), she should not have assumed that there was no need to present evidence as to her entry date.

Even if Lin was justified in believing that she did not need to present evidence about her entry date at the hearing, her due process claim would not succeed. Near the end of her hearing, it became apparent that the IJ expected Lin to submit evidence as to her entry date. At this point, Lin could have moved for a continuance of the hearing so that she could collect and present such evidence, see 8 C.F.R. § 1003.29, but she did not make such a motion. When the IJ asked Lin's lawyer whether she had any evidence to prove her entry date, Lin's lawyer simply responded, "Certainly, at this point, [we] do not because that issue has never been raised before." J.A. 219. Similarly, Lin could have later filed a motion to reopen the proceedings, see 8 C.F.R. § 1003.23,

12

in order to present evidence of her entry date. Although the agency has broad discretion to honor or deny these requests, the availability of these procedures satisfies us that Lin had a fair opportunity to be heard.

Lin attempts to bolster her due process claim by arguing that the government failed to give her the notice required by 8 C.F.R. § 1003.30. This regulation provides that "[a]t any time during deportation or removal proceedings, additional . . . factual allegations may be lodged by the [INS] in writing. The alien shall be served with a copy of these additional . . . allegations and the IJ shall read them to the alien." 8 C.F.R. § 1003.30. The problem with this argument is that the government made no "additional" factual allegations against Lin during the course of her removal proceedings that would entitle her to notice. The government's allegation is, and always was, that Lin entered the United States on or around May 10, 2001. If there is any complaint to be made about the government's conduct in this case, it is that the government did not waive the requirement that Lin prove the timeliness of her asylum application in light of its factual allegation as to her date of entry. But Lin argues something else, specifically, that the government was obligated to give her some kind of notice that timeliness was going to be an issue at the hearing. See J.A. 220 ("I don't know how this issue . . . could be raised [at] the last moment and never raised before . . . ."). It

13

is of no moment, however, that the government did not raise the issue of her asylum application's timeliness earlier in the proceedings because, as explained above, the burden of proof remained on Lin throughout the proceedings to prove her eligibility for asylum.

Finally, Lin's due process claim, even if otherwise meritorious, would fail because she cannot show prejudice. See Rusu, 296 F.3d at 320. The IJ made an adverse credibility determination, discussed below, that constituted an independent alternative ground for rejecting Lin's asylum application. In other words, Lin would not have been granted asylum even if her application had been timely filed because the IJ did not credit her overall testimony. Lin's due process challenge to the IJ's timeliness determination therefore fails.


III.

Lin next argues that the BIA erred by finding that the IJ made an adverse credibility determination. According to Lin, the IJ made no explicit credibility finding and the BIA therefore violated Lin's due process rights when it made an adverse credibility determination for the first time on appeal. This argument is unfounded because the IJ did, in fact, make an explicit adverse credibility finding. The IJ stated, "[W]e do not believe the respondent and we make an adverse credibility finding." J.A.

14

63. The BIA did not commit a due process violation in proceeding on the basis that the IJ had made an adverse credibility determination.

IV.

Finally, Lin argues that the IJ erred in finding that her testimony was not credible. We must defer to an IJ's adverse credibility determination that is supported by substantial evidence on the record "considered as a whole." Blanco de Belbruno v. Ashcroft, 362 F.3d 272, 278 (4th Cir. 2004) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). This deference is broad but not absolute: an IJ who rejects a witness's testimony because in his or her judgment it lacks credibility should offer a specific, cogent reason for his or her disbelief. Camara v. Ashcroft, 378 F.3d 361, 367 (4th Cir. 2004). "Examples of specific and cogent reasons 'include inconsistent statements, contradictory evidence, and inherently improbable testimony; [in particular,] where these circumstances exist in view of the background evidence on country conditions, it is appropriate for an Immigration Judge to make an adverse credibility determination on such a basis.'" Tewabe v. Gonzales, 446 F.3d 533, 538 (4th Cir. 2006) (alteration in original) (quoting In re S-M-J-, 21 I. & N. Dec. 722, 729, 1997 WL 80984 (BIA 1997) (en banc)). If the IJ's adverse credibility determination is not based on a specific, cogent reason, but is

15

instead based on speculation, conjecture, or an otherwise unsupported personal opinion, it cannot be upheld because it will not have been supported by substantial evidence. Id.

The IJ cited a number of reasons for discrediting Lin's testimony. For instance, the IJ found that the documents Lin submitted as proof of her abortion were unreliable because they were not authenticated. The IJ also cited the State Department country condition report observing that documentation from the Fuzhou region "is subject to widespread fabrication and fraud. This includes documents that purportedly verify . . . births and birth control measures . . . ." J.A. 320; see also J.A. 311 ("The U.S. Embassy and Consulates General are unaware of any so-called 'abortion certificates,' which often are presented as part of asylum applications as evidence a forced abortion."). The IJ also observed that Lin's medical records relating to the birth of her child did not document her alleged prior pregnancy and abortion. According to the IJ, the "medical records no doubt would discuss what she reported to the doctor about whether she had had any prior pregnancies." J.A. 59. In addition, the IJ discounted Lin's claim that her IUD was "lost," J.A. 149, because the claim did not appear consistent with common experience, and Lin offered no evidence to explain how "an IUD could fall out of a woman's body without her noticing it," J.A. 47. The IJ also had a hard time accepting that Lin was subjected to a forced abortion during the eighth month of

16

her pregnancy because there was no evidence discussed at the hearing that late-term abortions were performed in China. The IJ further noted some inconsistencies and omissions in Lin's asylum application with respect to her address and employment.

We must defer to the IJ's adverse credibility finding here because it is sufficiently supported by specific, cogent reasons based on the record as a whole. To be sure, certain aspects of the IJ's credibility determination are problematic. For instance, the IJ cited a lack of evidence of forced late-term abortions in China when, in fact, the State Department report in the record cites examples of such practices in China. In addition, the IJ cited a lack of pre-natal medical records confirming prior pregnancies, but Lin submitted a document that arguably documents a prior pregnancy. On balance, however, the IJ's credibility determination deserves our deference because it is supported by substantial evidence on the record "considered as a whole." Blanco de Belbruno, 362 F.3d at 278. For instance, the IJ gave specific and cogent reasons for doubting that Lin had been implanted with an IUD. The lack of reference to an IUD in Lin's prenatal medical records suggests that she never had the device. Indeed, Lin's assertion that the IUD was later "lost" borders on inherent implausibility. The IJ's unwillingness to fully credit the abortion certification is also defensible in light of information in the State Department report suggesting that such documents are

17

fraudulent. Furthermore, the IJ noted that the Lin's husband's testimony about their length of stay in the United States and their efforts to repay the smuggling debt simply did not add up: there is no way they could have repaid $50,000 by the time of the hearing given the testimony that they paid only about $10,000 per year. Lin's appellate brief argues that the IJ misunderstood this testimony because Lin and her husband, in fact, each paid about $10,000 a year. Although the evidence in the record concerning repayment of the debt could be clearer, it is sufficient to support the IJ's factual determination that the Lins together paid $10,000 per year. Finally, the IJ observed a significant inconsistency in the evidence concerning Lin's employment. Lin did not list any employment on her asylum application. When the IJ asked Lin at her asylum hearing whether everything in her application was "true, correct and up-to-date," Lin indicated that it was. J.A. 114. She later testified, however, that she had actually been working for the past year or two. Because the IJ cited these specific, cogent reasons for disbelieving Lin's testimony, we must conclude that the IJ's adverse credibility determination is supported by substantial evidence on the record as a whole.

V.

For the foregoing reasons, we conclude that the IJ did not violate Lin's due process rights in determining that Lin failed

18

to prove by clear and convincing evidence that her application was timely filed. We further conclude that the IJ's adverse credibility finding is supported by substantial evidence. Lin's petition for review is therefore denied.

<u>PETITION FOR REVIEW DENIED</u>

19