NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1709
_____

PHENG KUANG NA,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES
OF AMERICA,

Respondent


_____

On Petition for Review of a Decision
and Order of the Board of Immigration Appeals
(BIA No. A 088-646-122)
Immigration Judge:  Steven A. Morely
_____

Submitted under Third Circuit LAR 34.1(a)
October 6, 2016

BEFORE:  SHWARTZ, COWEN, and ROTH, Circuit Judges

(Filed:  December 14, 2016)
_____

OPINION*
_____

COWEN, Circuit Judge.

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7
does not constitute binding precedent

Pheng Kuang Na petitions for review of an order entered by the Board of Immigration Appeals ("BIA"), which dismissed his appeal from the order of the Immigration Judge ("IJ") denying his application for asylum and for withholding of removal. We will dismiss Na's petition in part and deny it in part.

I.

Na, a native and citizen of Indonesia, was admitted to the United States on November 11, 2005 as a nonimmigrant visitor with authorization to remain until May 6, 2006. On January 29, 2008, he was charged as removable as an alien who remained in the United States for a time longer than permitted. Na filed an application for asylum and for withholding of removal on September 21, 2010.

An asylum applicant must file his or her application within one year of arrival, 8 U.S.C. § 1158(a)(2)(B), or "demonstrate[ ] to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified in subparagraph (B)," 8 U.S.C. § 1158(A)(2)(D). "[Na] proffer[ed] that he suffers from PTSD [Post Traumatic Stress Disorder] and major depression . . . and has proffered the affidavit of Dr. Amy Wenzel [a psychologist]" in support of his claim of extraordinary circumstances. (AR192.) He further claimed that he had suffered past persecution as a Chinese Christian and feared that he would suffer persecution on account of his ethnicity and religion in the future. Na submitted various

2

exhibits regarding country conditions, including an affidavit from Dr. Jeffrey Winters (an expert on human rights practices in Indonesia).

The IJ denied Na's application, and the BIA dismissed his administrative appeal. Na filed a petition for review with this Court (No. 13-3360). The government moved for a remand in lieu of filing a responsive brief. Specifically, Na argued that the BIA made an impermissible factual finding in determining that his asylum application was not filed within a reasonable time. Addressing a 2005 incident in which Na was beaten by an Indonesian police officer, the IJ indicated that the loss of a tooth did not constitute a serious injury, even though a dentist claimed that he had lost six teeth and that the pattern of his missing teeth was consistent with significant trauma to the area. According to the government, "[r]emand would allow the Board to determine whether the 'reasonable time' determination is a finding it may make in the first instance or whether it is a factual finding subject to clear error review." (AR79 (citations omitted).) "Remand would also provide the Board an opportunity to clarify whether it affirmed the asylum denial for the reasons stated by the immigration judge." (AR80.) This Court granted this motion for a full remand.

On remand, the BIA yet again dismissed Na's appeal. The BIA did not reach the question of whether Na filed his asylum application within a reasonable period of time given the circumstances because it agreed "with the Immigration Judge's conclusion that the respondent did not meet his burden of proof to show extraordinary circumstances

directly related to his failure to timely file his asylum application."[1]  (AR4.)  Even though the BIA acknowledged that the IJ clearly erred by finding that Na lost only one or two teeth and that the dentist's report did not indicate that this injury was consistent with trauma, it upheld the IJ's determination that the harm Na suffered in Indonesia did not rise to the level of persecution.  According to the BIA, the IJ also appropriately determined that Na failed to establish a clear probability he would suffer persecution if he returns to Indonesia.

II.

We must dismiss Na's petition insofar as he challenges the agency's disposition of his asylum application on the grounds of untimeliness.  With the exception of constitutional claims and questions of law, we lack the jurisdiction to review such determinations.[2]  8 U.S.C. § 1158(a)(3); 8 U.S.C. § 1252(a)(2)(D); Jarbough v. Attorney General, 483 F.3d 184, 188-90 (3d Cir. 2007); Sukwanputra v. Gonzales, 434 F.3d 627, 633-35 (3d Cir. 2006).  According to Na, the IJ applied the wrong legal standard by requiring him to establish the existence of extraordinary circumstances by a preponderance of evidence because "[t]he statute only requires Mr. Na to demonstrate 'to the satisfaction of the Attorney General' that he qualifies for an exception" and, under the applicable regulation, he likewise need only show "'to the satisfaction of . . . the

---

[1] According to the BIA, the IJ's clear error in finding that the psychological report stated that Na's wife was still in Indonesia was also harmless because it did not affect the BIA's own conclusion that Na failed to show that his failure to file in a timely fashion was due to his mental health issues.

[2] We otherwise possess jurisdiction pursuant to 8 U.S.C. § 1252(b)(1).  We review the agency's factual determinations under a "substantial evidence" standard.  See, e.g., Guo v. Ashcroft, 386 F.3d 556, 561-62 (3d Cir. 2004).

4

immigration judge' that the circumstances 'directly related to the failure to meet the 1-year deadline.'" (Petitioner's Brief at 18 (emphasis omitted).) Nevertheless, our grant of jurisdiction is "narrowly circumscribed." Jarbough, 483 F.3d at 188 (citations omitted). In fact, this "satisfaction" language "implies that the Attorney General's determination entails an exercise of discretion." Sukwanputra, 434 F.3d at 635 (citing Vasile v. Gonzales, 417 F.3d 766, 768 (7th Cir. 2005)). The BIA then exercised de novo review over the sufficiency of the evidence offered by Na, and it ultimately agreed with the IJ that Na did not meet his burden of proof in this case.[3] Na further claims that the IJ's ruling was "infected" by a multitude of errors. (Petitioner's Brief at 29 (emphasis omitted).) For example, the IJ purportedly ignored the psychologist's expert findings. However, "courts have recognized arguments such as that an Immigration Judge or the BIA incorrectly weighed evidence, failed to consider evidence or improperly weighed equitable factors are not questions of law under § 1252(a)(2)(D)." Jarbough, 483 F.3d at 189 (citing Bugayong v. INS, 442 F.3d 67, 71-72 (2d Cir. 2006); Elysee v. Gonzales, 437 F.3d 221, 223-24 (1st Cir. 2006); Higuit v. Gonzales, 433 F.3d 417, 420 (4th Cir. 2006)).

---

[3] Unlike other provisions of the Immigration and Naturalization Act, § 1158(a)(2)(D) does not specify a burden of proof by which a petitioner must satisfy the Attorney General and so leaves the determination of proof needed to the agency. See, e.g., 8 U.S.C. § 1255(e)(3) (providing that a petitioner can obtain a visa on the basis of a marriage entered into during the time that adjudicative proceedings were pending "if the alien establishes by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith."). Thus, the burden of proof required here is simply an issue of how much evidence that judge deemed necessary to establish extraordinary circumstances, which, as noted in the text, we lack jurisdiction to review. See Jarbough, 483 F.3d at 189 (weighing evidence of extraordinary circumstances is an unreviewable factual issue for purposes of § 1158(a)(2)(B)).

We otherwise will deny the petition for review because the agency's denial of Na's withholding application was supported by substantial evidence in the record. An applicant for withholding of removal must establish a clear probability that the applicant's life or freedom would be threatened because of his or her race, religion, nationality, membership in a particular social group, or political opinion. See, e.g., id. at 190. If he or she suffered past persecution, it is presumed that the applicant's life or freedom would be threatened in the future. See, e.g., id. at 191. It appears that, in 2005, a Native Indonesian police officer (who was looking for Na's brother because the brother was dating a Native Indonesian) attacked Na, bruising him and knocking out six of his teeth. The agency did not commit reversible error by finding that this incident, while clearly deplorable and traumatic to Na himself, did not rise to the level of persecution— "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 2007); see also, e.g., Kibinda v. Attorney General, 477 F.3d 113, 119-20 (3d Cir. 2007) (finding that single incident in which petitioner was detained for five days during which time petitioner was hit in jawbone by heavy object thrown by guard requiring seven stitches did not constitute persecution). "The respondent did not suffer repeated incidents of violence." (AR4 (citing Voci v. Gonzales, 409 F.3d 607, 614-15 (3d Cir. 2005).) With respect to the probability of future persecution, several years have passed since the 2005 incident, and "there is no evidence of record that authorities in Indonesia have any interest in [Na]." (AR4.) In fact, there was no evidence that his brother had been attacked since the 2005 incident. Finally, the agency appropriately disposed of Na's

6

claim that there was a pattern or practice of persecution against Chinese Christians. "The record shows widespread discrimination, but not pervasive or systemic persecution." (AR5.) In turn, the State Department 2011 International Religious Freedom Report for Indonesia indicated that the Indonesian government generally respected religious freedom for the six officially recognized religions (which include Catholicism and Protestantism). See, e.g., Lie v. Ashcroft, 396 F.3d 530, 537-38 (3d Cir. 2005) ("Given these considerations, we are not compelled to find that such attacks constitute a pattern or practice of persecution against Chinese Christians." (footnote omitted)).

## III.

We will dismiss the petition for review in part and deny it in part. We will dismiss Na's petition insofar as we lack jurisdiction to review the agency's determination that Na did not establish extraordinary circumstances justifying his delay in filing his application. Otherwise, we will deny his petition.