PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SANG Y. LEE,

　　　　　　*Plaintiff-Appellant,*

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

　　　　　　*Defendant-Appellee.*

No. 08-1659

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(1:07-cv-00141-CCB)

Argued: October 27, 2009

Decided: January 25, 2010

Before TRAXLER, Chief Judge, and NIEMEYER and
AGEE, Circuit Judges.

Affirmed by published opinion. Chief Judge Traxler wrote the
opinion, in which Judge Niemeyer and Judge Agee joined.

## COUNSEL

**ARGUED**: Ivan Yacub, Falls Church, Virginia, for Appel-
lant. Jason Daniel Medinger, OFFICE OF THE UNITED
STATES ATTORNEY, Baltimore, Maryland, for Appellee.

**ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

---

## OPINION

TRAXLER, Chief Judge:

Sang Lee, a Korean national, entered the United States in July 2000 as a visitor with permission to remain until January 21, 2001. Lee overstayed his visa and remains in the United States despite his failure to maintain lawful nonimmigrant status.

In May 2003, Lee applied under the Immigration and Nationality Act ("INA") to adjust his status and become a permanent resident based on his employment with the Korean Broadcasting Network ("KBN"). *See* 8 U.S.C. § 1255(a). Ordinarily, the failure to maintain continuous lawful status by overstaying a visa renders a prospective immigrant ineligible for an adjustment of status. *See* 8 U.S.C. § 1255(c)(2) (excluding aliens who were "in unlawful immigration status on the date of filing the application for adjustment of status or who . . . failed . . . to maintain continuously a lawful status since entry into the United States"). Nevertheless, Lee claimed that he could still apply for adjusted status by virtue of 8 U.S.C. § 1255(i), a provision that permitted otherwise ineligible aliens to apply for an adjustment of status. This provision expired on April 30, 2001, except for "grandfathered aliens." *See* 8 C.F.R. § 245.10(b); *Ogundipe v. Mukasey*, 541 F.3d 257, 259 (4th Cir. 2008).

The District Director for the United States Citizenship & Immigration Services ("USCIS" or "the Service") denied Lee's application, concluding that he did not qualify as a "grandfathered" alien under 8 C.F.R. § 245.10(j) and thus was precluded from filing for an adjustment of status. Lee did not

appeal the District Director's denial to the Board of Immigration Appeals ("BIA") because, despite Lee's unlawful immigration status, the Service has yet to place him in removal proceedings. Instead, after the Director denied his application to adjust status, Lee filed this action under the Administrative Procedure Act ("APA") challenging the validity of 8 C.F.R. § 245.10(j). The district court determined that it lacked jurisdiction and dismissed Lee's action. For the reasons discussed below, we affirm.

## I.

### A.    Grandfathering under Section 1255(i)

To better understand both the procedural history of Lee's case and the arguments he raises here, it is helpful to review briefly the adjustment-of-status process as it relates to § 1255(i) and its grandfathering clause.

Prior to 1952, obtaining immigrant status was possible only through the issuance of an immigrant visa by a United States consular office abroad. *See Choe v. INS*, 11 F.3d 925, 928 (9th Cir. 1993); *Landin-Molina v. Holder*, 580 F.3d 913, 916 (9th Cir. 2009) (explaining that under this practice "an alien already inside this country could acquire immigrant status only by temporarily leaving the United States to secure an appropriate visa"). In 1952, Congress established an adjustment-of-status process, codified in 8 U.S.C. § 1255(a), affording aliens who entered as nonimmigrants a means of becoming permanent residents without having to depart the United States and apply for an immigrant visa from a consular office abroad. *See* 8 U.S.C. § 1255(a); *INS v. Bagamasbad*, 429 U.S. 24, 25 n.* (1976) (per curiam) (explaining that the adjustment-of-status provision was enacted so that "aliens would not inevitably be *required* to leave the country and apply to a United States consul in order to obtain permanent-resident status").

Generally speaking, Congress has limited the use of the adjustment-of-status mechanism to lawfully present aliens in order "to discourage intending immigrants from moving to the United States before becoming fully eligible for permanent residence and to encourage them to follow the orderly consular process for the issuance of immigrant visas." *In re Briones*, 24 I. & N. Dec. 355, 359 (BIA 2007); *see Landin-Molina*, 580 F.3d at 916 (observing that "this process benefitted only those aliens who were in the United States lawfully"). For our purposes, these lawful-presence restrictions are codified in § 1255(c).

In 1994, Congress enacted § 1255(i), temporarily lifting § 1255(c)'s restrictions on certain aliens seeking adjustment of status. Under the version originally enacted by Congress,

> an alien who was eligible to receive an immediately available immigrant visa, but who would be precluded from adjustment of status under [§ 1255(a)] for having entered without inspection or for one of the reasons enumerated in [§ 1255(c)], was permitted to adjust status upon payment of a surcharge along with an application for adjustment under [§ 1255(i)].

*In re Wang*, 23 I. & N. Dec. 924, 927 (BIA 2006). Because this measure was intended to be temporary, it contained a sunset provision requiring that a § 1255(i) application for adjustment of status be filed between October 1, 1994, and October 1, 1997. *See* 1995 Appropriations Act, Pub. L. No. 103-317, § 506(b), (c), 108 Stat. 1724, 1765-66 (effective Oct. 1, 1994); *In re Briones*, 24 I. & N. Dec. at 360.

After the expiration of § 1255(i) under the 1994 Act, Congress added a grandfather clause to allow the continued use of § 1255(i) by aliens who were beneficiaries of either a visa petition or a labor certification filed on or before January 14, 1998. *See In re Wang*, 23 I. & N. Dec. at 927 (explaining that the grandfather provision "shift[ed] the focus of the filing

requirements from the date the application for adjustment of status was filed to the date on which the underlying visa petition or application for a labor certification was filed"); 1998 Appropriations Act, Pub. L. No. 105-119, § 111(b), 111 Stat. 2440, 2458 (1997).

In 2000, Congress extended the expiration date for § 1255(i) adjustment applications to April 30, 2001, *see* 2001 Appropriations Act, Pub. L. 106-554, § 1502(a)(1)(B), 114 Stat. 2763,[1] the cutoff date incorporated into the current version of § 1255(i):

> (1) Notwithstanding the provisions of subsections (a) and (c) of this section, an alien physically present in the United States—
>
> > (A) who—
> >
> > > (i) entered the United States without inspection; or
> > >
> > > (ii) is within one of the classes enumerated in subsection (c) of this section;
> >
> > (B) who is the beneficiary . . . of—
> >
> > (i) [an immigrant visa petition] that was filed with the Attorney General on or before April 30, 2001; or

---

[1]Congress also added a physical presence requirement—if the visa petition or labor certification was filed after January 14, 1998, the alien must have been physically present in the United States on the December 21, 2000, date that the amendments were enacted. *See* 8 U.S.C. § 1255(i)(1)(c). Aliens seeking to apply for adjustment of status under § 1255(i) are still required to pay a fine in addition to the standard processing fees associated with a § 1255(a) application. *See* 8 U.S.C. § 1255(i)(1); 8 C.F.R. § 245.10(c).

> (ii) an application for a labor certification . . . that was filed pursuant to the regulations of the Secretary of Labor on or before such date;
>
> . . .
>
> may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence.

8 U.S.C. § 1255(i)(1). Thus, after the 2000 amendments, § 1255(i) effectively forgives a period of illegal stay for any alien who is the beneficiary of a labor certification application or an immigrant visa petition filed on or before April 30, 2001. *See Figueras v. Holder*, 574 F.3d 434, 436 (7th Cir. 2009) ("[A]djustment under 8 U.S.C. § 1255(i) . . . waives any period of illegal stay in the United States if a visa petition was filed on behalf of the petitioner on or before April 30, 2001. . . ."). The term "grandfathered alien" appears in the implementing regulations, not the statutory text. The regulations use this term as a type of shorthand for an alien who is the beneficiary of an application for labor certification or a petition for an immigrant visa that was filed on or before April 30, 2001. *See* 8 C.F.R. § 245.10(a)(1)(i).

### B. Adjustment of Status under Section 1255(i)

The fact that an alien is grandfathered for § 1255(i) purposes does not mean he is *a fortiori* eligible for an adjustment of status; it means only that he is "entitled to apply for adjustment of status." *Ahmed v. Gonzales*, 465 F.3d 806, 808 (7th Cir. 2006) (emphasis omitted). Under § 1255(i), a grandfathered alien must make essentially the same eligibility showing required in any application under § 1255(a) for adjustment of status: (1) that "the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence," and (2) that "an immigrant visa is immediately avail-

able to the alien at the time the [§ 1255(i)] application is filed." 8 U.S.C. § 1255(i)(2); *see Ahmed v. Gonzales*, 447 F.3d 433, 438 (5th Cir. 2006) ("Section 1255(i) does *not* . . . create an automatic or a mandatory exception to § 1255(c)" in view of the fact that "the entire application for adjustment of status must meet with the discretionary approval of the Attorney General or his designee.").

Aliens who seek to adjust their status based on employment, as Lee does, are thus required to demonstrate that they are eligible for an employment-based visa and that an employment-based visa is immediately available. *See Lendo v. Gonzales*, 493 F.3d 439, 442 (4th Cir. 2007). To do so requires the prospective immigrant to find a job with an employer willing to sponsor him through the time-consuming application process for labor certification and issuance of an immigrant visa. The prospective employer first must apply on behalf of the alien to the Department of Labor ("DOL") for a Labor Certification. *See* 8 U.S.C. § 1153(b)(3)(C); *see also United States v. Ryan-Webster*, 353 F.3d 353, 355 (4th Cir. 2003). The DOL's issuance of a Labor Certification indicates that the DOL is satisfied that "(1) sufficient United States workers are not able, willing, qualified, and available for a particular job; and (2) employment of a particular alien will not adversely effect the wages and working conditions of United States workers similarly employed." *Ryan–Webster*, 353 F.3d at 356; *see* 8 U.S.C. § 1182(a)(5)(A)(i). With a valid Labor Certification in hand, the prospective employer then submits a petition (technically speaking, a Form I-140 Immigrant Visa Petition for Alien Worker) to the USCIS for an immigrant work visa. *See Lendo*, 493 F.3d at 441; *see* 8 U.S.C. § 1153(b). At that point, the alien, assuming he qualifies for grandfathered status, can apply to adjust his status by filing a Form I-485. *See* 8 U.S.C. § 1255(i); 8 C.F.R. § 204.5(n).[2]

---

[2]If the Service grants the application to adjust status, then the alien is issued a "Green Card" reflecting his right to live and work in the United States permanently (assuming he does nothing to cause his removal). *See Lendo*, 493 F.3d at 442; *Ryan–Webster*, 353 F.3d at 356.

Finally, even after a grandfathered alien has established eligibility for adjustment of status, the decision is ultimately a discretionary one for the Attorney General, acting through his designee. *See* 8 U.S.C. § 1255(i)(2) ("[T]he Attorney General *may* adjust the status of the alien to that of an alien lawfully admitted for permanent residence if [the statutory eligibility requirements are satisfied]." (emphasis added)); *Higuit v. Gonzales*, 433 F.3d 417, 419 (4th Cir. 2006). Thus, even after an alien establishes grandfathered status under § 1255(i), he faces "a two-step process, involving, first, proof of [his] statutory eligibility for the adjustment, and second, an exercise of discretion by the Attorney General as to whether to grant such relief." *Singh v. Gonzales*, 468 F.3d 135, 138 (2d Cir. 2006) (internal quotation marks omitted).

## II.

In 2003, Lee found a willing sponsor in KBN, which offered him employment as a graphic designer. Before offering the job to Lee, KBN had already obtained an approved Labor Certification on behalf of another individual. Originally, KBN had planned for Eun Kun Lee, who is unrelated to Sang Lee, to fill the graphic design position. In January 2001, KBN filed an application on behalf of Eun Kun Lee for a Labor Certification on the graphic design position. Soon thereafter, the DOL issued the Labor Certification as requested, but Eun Kun ended up not working for KBN as anticipated.

When KBN offered the position to Sang Lee in 2003, it requested permission from the DOL to use the previously-approved Labor Certification for Sang Lee even though he was not the named beneficiary. Under the labor regulations then in effect, a sponsoring employer was permitted to substitute a different prospective worker than the one originally named on the Labor Certification. *See* 20 C.F.R. § 656.30(c)(2) (2003). In accordance with this practice, the

DOL permitted KBN to use the existing Labor Certification for the benefit of Sang Lee.[3]

Based on this substituted Labor Certification, KBN petitioned the USCIS on behalf of Sang Lee for a work visa. Lee simultaneously petitioned for adjustment of status under § 1255(i), claiming eligibility under the grandfathering provision as "the beneficiary of an application for labor certification filed on or after January 15, 1998, and on or before April 30, 2001." J.A. 61. In November 2003, the USCIS granted KBN's visa petition on behalf of Lee.

In early 2004, however, while Lee's petition for adjustment of status was still pending, Lee left KBN and began working as a graphic designer for a different Korean news outlet in Washington, D.C. In response, KBN withdrew the visa petition it had filed on Lee's behalf, resulting in the automatic revocation of USCIS's approval of KBN's immigrant visa petition. *See* 8 C.F.R. § 205.1(a)(3)(iii)(c). The revocation then resulted in the USCIS's denial of Lee's application for adjustment of status because a visa was no longer immediately available for Sang Lee. *See* 8 C.F.R. § 245.2(a)(2)(i); 8 U.S.C. § 1255(i)(2)(B). Thus, the USCIS ruled that, "[a]bsent evidence that [Lee is] entitled to any other immigrant classification, [Lee's] application must be, and hereby is denied." J.A. 86.

Through new legal counsel, Lee filed a motion for reconsideration, arguing that he was still eligible for adjustment of status under the portability provisions of the American Competitiveness in the Twenty First Century Act of 2002, Pub. L. 106-313. Under the Act,

---

[3]The Secretary of Labor stopped the practice of Labor Certification substitution in 2007. *See* 72 Fed. Reg. 27904, 27944 (May 17, 2007); 20 C.F.R. § 656.11(a) (2009). The new rule, however, does not affect substitutions approved by the DOL before the effective date of July 16, 2007.

an approved immigration petition will remain valid for the purpose of an application for adjustment of status when the alien changes jobs if two conditions are met: (1) the adjustment of status application has remained unadjudicated for more than 180 days; and (2) the alien's new employment is the same or similar to the job for which the visa petition was approved.

*Sung v. Keisler*, 505 F.3d 372, 374 (5th Cir. 2007); *see* 8 U.S.C. § 1154(j).[4] Because Lee's application had been pending for at least 180 days and his current employment was identical to his job at KBN, Lee contended that the visa petition filed on his behalf should not have been revoked and that he was eligible for adjustment of status based on his current employment.

After initially denying the motion to reconsider as untimely, the Director reopened Lee's case because the USCIS failed to issue the Notice of Intent to Deny required "in cases involving revoked employment-based visa petitions" where the "application for adjustment of status was pending for 180 days or more." J.A. 104. Since the Service did not issue the Notice of Intent to Deny, Lee was not afforded the opportunity to submit proof of his similar employment under the portability provision. Thus, the Director concluded the original denial of Lee's application under § 1255(i) was erroneous.

---

[4] An alien may lose his eligibility for § 1255 status adjustment while awaiting the adjustment if, *inter alia*, the alien is no longer employed by the employer who submitted the approved visa petition. However, noting the substantial time necessary for processing adjustment of status applications, Congress enacted § 204(j) of the Immigration and Naturalization Act, 8 U.S.C.A. § 1154(j)-the portability statute.

*Sung v. Keisler*, 505 F.3d 372, 374 (5th Cir. 2007).

Despite reopening the case, the Director nevertheless concluded that Lee failed to qualify for grandfathered status under § 1255(i) because he was not the beneficiary originally named in the Labor Certification. The Director noted that although the Labor Certification was filed before the April 30, 2001, cutoff date, it "was not filed on [Lee's] behalf," but "on behalf of another individual, Eun Kun Lee," J.A. 107, a disqualifying fact under the regulations:

> Only the alien who was the beneficiary of the application for the labor certification on or before April 30, 2001, will be considered to have been grandfathered for purposes of filing an application for adjustment of status under [§ 1255(i)]. An alien who was previously the beneficiary of the application for the labor certification but was subsequently replaced by another alien on or before April 30, 2001, will not be considered to be a grandfathered alien. *An alien who was substituted for the previous beneficiary of the application for the labor certification after April 30, 2001, will not be considered to be a grandfathered alien.*

8 C.F.R. § 245.10(j) (emphasis added).

Lee sought no further administrative review. The regulations do not provide for an internal appeal from a USCIS decision denying an application for adjustment of status; the alien can obtain further review only by renewing the application *during removal proceedings*, whereupon the Immigration Judge and the Board of Immigration Appeals will consider it. *See* 8 C.F.R. § 245.2(a)(5)(ii).

Having not yet been placed in removal proceedings, Lee filed this action in federal district court under the APA, *see* 5 U.S.C. §§ 701-706, challenging the USCIS's denial of his application for adjustment of status. Lee argued that the promulgation of 8 C.F.R. § 245.10(j) was an *ultra vires* exercise

of USCIS's authority to implement § 1255(i) because the regulation improperly narrowed the scope of "beneficiary" within the meaning of the statute.

The district court granted USCIS's motion to dismiss for lack of jurisdiction. Pursuant to the judicial review provisions of the Immigration and Nationality Act ("INA"), *see* 8 U.S.C. § 1252(a)(2)(B) and (D), the district court concluded that any legal challenge to a USCIS denial of adjustment of status must be brought via petition for review in the court of appeals, not in district court. The district court found it lacked jurisdiction because Lee did not follow this procedural course: "Lee's proper recourse, therefore, is to exhaust the applicable administrative review mechanism by proceeding from USCIS to the BIA and then directly to the circuit court of appeals." J.A. 160.

## III.

Lee argues that the district court had jurisdiction to consider his claim under the APA, which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA "is not a jurisdiction-conferring statute." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006). Rather, the jurisdictional source for an action under the APA is the "federal question" statute, which grants the district court "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," *see* 28 U.S.C. § 1331, and thereby "confer[s] jurisdiction on federal courts to review agency action." *Califano v. Sanders*, 430 U.S. 99, 105 (1977). The judicial review provisions of the APA, *see* 5 U.S.C. §§ 701-706, simply provide "a limited cause of action for parties adversely affected by agency action." *Trudeau*, 456 F.3d at 185; *see Bowen v. Massachusetts*, 487 U.S. 879, 891 n.16 (1988) ("[I]t is common ground that if review is proper under the APA, the District

Court ha[s] jurisdiction under 28 U.S.C. § 1331."). In his APA action, Lee claims that he was adversely affected by the District Director's application of 8 C.F.R. § 245.10(j), an invalid regulation, to deny him adjustment of status under § 1255(i).

Although the APA embodies a "basic presumption of judicial review" of final agency action, *Lincoln v. Vigil*, 508 U.S. 182, 190 (1993) (internal quotation marks omitted), its judicial review provisions do not apply where "statutes preclude judicial review." 5 U.S.C. § 701(a)(1); *see Wade v. Blue*, 369 F.3d 407, 411 n.2 (4th Cir. 2004) ("[A] specific limitation of federal court jurisdiction . . . overrides the general grant of federal jurisdiction in § 1331.") Thus, the first issue we must address is whether the INA precludes review of Lee's claim under the APA.

The INA specifically closes the door to judicial review of certain discretionary agency decisions, including the denial of an application for adjustment of status:

> *Notwithstanding any other provision of law* (statutory or nonstatutory), . . . except as provided in subparagraph (D), and *regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction* to review—
>
> (i) *any judgment regarding the granting of relief under section* 1182(h), 1182(i), 1229b, 1229c, or *1255* of this title, or
>
> (ii) any other decision . . . specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B) (emphasis added).

Congress expressly included decisions to deny relief under § 1255 within this jurisdiction-limiting provision; therefore, the denial of an application for adjustment of status under § 1255(i) is not amenable to judicial review. *See* 8 U.S.C. § 1252(a)(2)(B); *see also Higuit*, 433 F.3d at 419. And, although § 1252 generally addresses judicial review with regard to final orders of removal, the language "regardless of whether the judgment, decision, or action is made in removal proceedings" makes clear that the jurisdictional limitations imposed by § 1252(a)(2)(B) also apply to review of agency decisions made outside of the removal context. *See, e.g.*, *Mejia Rodriguez v. United States Dep't of Homeland Sec.*, 562 F.3d 1137, 1142 n.13 (11th Cir. 2009) (per curiam); *Jilin Pharmaceutical USA, Inc. v. Chertoff*, 447 F.3d 196, 199 n.5 (3d Cir. 2006). Thus, the fact that Lee is not and has never been in removal proceedings does not render § 1252(a)(2)(B) inapplicable.

The claim raised in Lee's APA action falls squarely within the scope of § 1252(a)(2)(B)(i). Although Lee's claim in his amended complaint is carefully worded to avoid expressly challenging the denial of his application for adjustment of status, that is clearly what Lee seeks to do. Lee's complaint is that the District Director made a faulty eligibility determination under § 1255(i); that determination was the sole basis for the denial of Lee's application and cannot be divorced from the denial itself.

We also find Lee's argument unavailing to the extent he characterizes his claim as raising a pure question of law subject to review under § 1252(a)(2)(D). This provision, which was added through the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, provides:

> Nothing in subparagraph (B) or (C), or in any other provision of this Act (other than this section) which

limits or eliminates judicial review, shall be con-
strued as precluding review of constitutional claims
or questions of law *raised upon a petition for review
filed with an appropriate court of appeals* in accor-
dance with this section.

8 U.S.C. § 1252(a)(2)(D) (emphasis added). Congress made
explicit that despite the jurisdiction-stripping language of
§ 1252(a)(2)(B), "courts of appeal [retain] a narrowly circum-
scribed jurisdiction to resolve constitutional claims or ques-
tions of law raised by aliens seeking discretionary relief."
*Higuit*, 433 F.3d at 419.

Even if we assume Lee's challenge raises a reviewable
question of law, § 1252(a)(2)(D) does not give Lee a jurisdic-
tional bootstrap into district court. The express language of
the statute requires Lee to raise any constitutional or legal
questions "upon a petition for review filed with an appropriate
court of appeals." 8 U.S.C. § 1252(a)(2)(D). To the extent
Congress decided to permit judicial review of a constitutional
or legal issue bearing upon the denial of adjustment of status,
it intended for the issue to be raised to the court of appeals
*during removal proceedings. See Hassan v. Chertoff*, 543
F.3d 564, 566 (9th Cir. 2008) (per curiam) ("Although 8
U.S.C. § 1252(a)(2)(D) preserves jurisdiction over 'constitu-
tional claims or questions of law raised upon a petition for
review filed with an appropriate court of appeals in accor-
dance with this section,' that provision is inapplicable here.
Hassan's challenge to the denial of adjustment was not raised
upon a petition for review filed with this court; his case comes
to us on direct appeal from the district court."). Unlike sub-
section (B), § 1252(a)(2)(D), by its express terms, applies
only in the context of removal proceedings. *See e.g.*, *Abdelw-
ahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009) ("First,
§ 1252(a)(2)(D) applies only to questions of law 'raised upon
a petition for review filed with an appropriate court of
appeals.' Thus, it does not grant jurisdiction to review ques-
tions of law in district court cases."); *Hamilton v. Gonzales*,

485 F.3d 564, 567 n.5 (10th Cir. 2007); *Jilin Pharmaceutical*, 447 F.3d at 206 n.16; *El-Khader v. Monica*, 366 F.3d 562, 567-68 (7th Cir. 2004). We agree with the Tenth Circuit that this provision "is naturally read as a limitation on the broad jurisdiction stripping provisions found in §§ 1252(a)(2)(B) and (C)." *Hamilton*, 485 F.3d at 567. It does not purport to "confer an expanded grant of jurisdiction but merely confirm[s] our authority to review 'constitutional claims and questions of law,' but only after a final order of removal has been entered." *Id.* at 567.[5]

Like a number of our sister circuits, we therefore conclude that the district court did not have jurisdiction to entertain Lee's challenge to the District Director's eligibility determination and subsequent denial of adjustment of status. *See Abdelwahab*, 578 F.3d at 820-21; *Hassan*, 543 F.3d at 566; *McBrearty v. Perryman*, 212 F.3d 985, 987 (7th Cir. 2000); *cf. Hamilton*, 485 F.3d at 567. *But see Pinho v. Gonzales*, 432 F.3d 193, 200-04 (3d Cir. 2005). The statute specifically provides that the exclusive means of judicial review of a legal issue related to the denial of an adjustment of status is by a petition for review to the court of appeals.

## IV.

For the foregoing reasons, we affirm the decision of the district court.[6]

*AFFIRMED*

---

[5]Lee claims that, in cases like his, our interpretation leads to unjust results. Because the Agency controls when or even if Lee will be placed in removal proceedings, Lee argues that he is effectively in a state of "limbo" and cannot seek judicial review. Our task, however, is only to determine the meaning of the statute as passed by Congress, not to question the wisdom of the provision enacted. *See Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 308 (4th Cir. 2000), *aff'd sub nom.*, *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002).

[6]In view of our conclusion that § 1252(a)(2)(B)(i) precludes the district court's jurisdiction, we need not address the USCIS's exhaustion argument. *See El-Khader v. Monica*, 366 F.3d 562, 569 n.9 (7th Cir. 2004).