**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2441**

CURTIS DEWAYNE MOORE; PATRICIA GRANT-MOORE,

        Plaintiffs - Appellants,

v.

DENISE M. FRAZIER, District Director, Citizenship and Immigration Services; KENNETH T. CUCCINELLI, Acting Director, Citizenship & Immigration Services; KEVIN K. McALEENAN, Acting Secretary, Department of Homeland Security; WILLIAM P. BARR, Attorney General,

        Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:17-cv-00542-FL)

Argued: September 18, 2019                       Decided: October 31, 2019

Before WILKINSON, NIEMEYER, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

**ARGUED:** William Randall Stroud, ARANEDA AND STROUD LAW GROUP, Raleigh, North Carolina, for Appellants. Lori B. Warlick, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Jorgelina E. Araneda, ARANEDA AND STROUD LAW GROUP, Raleigh, North Carolina, for Appellants. Robert J. Higdon, Jr., United States Attorney, Joshua B. Royster, Assistant

United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellees.

———————

AGEE, Circuit Judge:

Curtis Dewayne Moore and his wife, Patricia Grant-Moore, appeal from the district court's dismissal of their complaint alleging the U.S. Citizenship and Immigration Services ("USCIS") unlawfully rejected the Form I-130 Petition for Alien Relative ("I-130 Petition") that Mr. Moore filed on behalf of his wife. The Moores alleged USCIS erred by denying the I-130 Petition according to an amended version of 8 U.S.C. § 1154 that was in effect when the petition was adjudicated rather than using the version of that statute in effect when the petition was filed. The district court dismissed the Moores' complaint after concluding it lacked jurisdiction to consider the claim under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* For the reasons set out below, we conclude that the district court had jurisdiction, but we affirm the judgment dismissing the complaint because USCIS correctly used the amended statute in adjudicating Mr. Moore's I-130 Petition.

I.

The underlying facts are not in dispute. Mr. Moore is a United States citizen; Mrs. Moore is a citizen of Jamaica. The couple married in February 2006. Two months later, Mr. Moore pleaded guilty to a Colorado sex offense involving a minor victim. The following month, Mr. Moore filed an I-130 Petition, which is the first step to having a non-citizen's immigration status reclassified based on a familial relationship to a U.S. citizen. *See* 8 U.S.C. § 1154(a)(1)(A)(i); 8 U.S.C. § 1101(a)(15)(K)(ii).

3

At the time Mr. Moore filed his I-130 Petition, 8 U.S.C. § 1154 authorized all U.S. citizens to file an I-130 Petition, have USCIS confirm the bona fides of the factual basis for the adjustment of status, and thereafter obtain USCIS "approval" of the I-130 Petition so that the non-citizen family member could then pursue reclassification. A few months after Mr. Moore filed his I-130 Petition, but before USCIS acted on it, 8 U.S.C. § 1154 was amended as part of the Adam Walsh Child Protection and Safety Act of 2006 to require an additional step: USCIS must perform a no-risk determination for U.S. citizen petitioners with a conviction for specified offenses against a minor. The statute was amended in two ways, adding the following italicized text to Clause (i) and adding an entirely new provision as Clause (viii):

> (i) *Except as provided in clause (viii)*, any citizen of the United States claiming that an alien is entitled to classification by reason of [marriage] . . . may file a petition with the Attorney General for such classification.
>
> . . . .
>
> (viii)(I) Clause (i) shall not apply to a citizen of the United States who has been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition described in clause (i) is filed.

Clause (viii) also defines what a "specified offense against a minor" is by incorporating the definition from 34 U.S.C. § 20911. 8 U.S.C. § 1154(a)(1)(A)(viii)(II).

Over three years after Mr. Moore filed his I-130 Petition, in December 2009, USCIS denied it. The administrative record is not part of the record in this case, but the final denial—which followed several appeals to the Board of Immigration Appeals ("BIA") and

4

remands to USCIS—was based on USCIS's determination that Mr. Moore had a qualifying conviction for a specified offense against a minor and that he had failed to show he posed no risk to his wife. In August 2017, the BIA issued a one-member final decision dismissing Mr. Moore's appeal of USCIS's decision.

Thereafter, the Moores filed a complaint in the U.S. District Court for the Eastern District of North Carolina alleging that USCIS's denial of Mr. Moore's I-130 Petition violated the Administrative Procedure Act ("APA"), the INA, and the Fifth Amendment of the U.S. Constitution. Specifically, they alleged that the amended version of 8 U.S.C. § 1154 did not apply to Mr. Moore's I-130 Petition because he had filed the petition prior to the amendment and the statutory language applies prospectively, caveating who may file. They sought a declaratory judgment that Mr. Moore was entitled to approval of his I-130 Petition under the version of § 1154 applicable at the time it was filed.

USCIS moved to dismiss for lack of jurisdiction, and the district court granted that motion.[1] In sum, the district court concluded that the INA did not authorize federal district courts to review the denial of an I-130 Petition because 8 U.S.C. § 1252(a)(2)(B) stripped federal courts of jurisdiction to review the denial of discretionary relief such as I-130 Petitions. Further, it held that § 1252(a)(2)(D) authorized only courts of appeals to review

---

[1] The four defendants being sued in their official capacities are Denise Frazier, the District Director for the USCIS office that denied Mr. Moore's I-130 Petition; Kenneth T. Cuccinelli, the Director of USCIS; Kevin K. McAleenan, the Acting Secretary of the Department of Homeland Security (under which USCIS operates); and William P. Barr, the Attorney General of the United States. The opinion will refer to them collectively as "USCIS."

agency decisions and only in the context of a removal proceeding. Based on its reading of these provisions, the district court held it lacked jurisdiction to consider the Moores' claim.

The Moores noted a timely appeal, and the Court has jurisdiction under 28 U.S.C. § 1291.

## II.

### A.

We review the district court's dismissal of the Moores' complaint under a split standard of review, reviewing its factual findings for clear error and its legal conclusions de novo. *Al Shimari v. CACI Premier Tech., Inc.*, 840 F.3d 147, 154 (4th Cir. 2016). When reviewing the proper interpretation of a statute that is unambiguous, "our analysis begins and ends with the statute's plain language." *Ignacio v. United States*, 674 F.3d 252, 257 (4th Cir. 2012). Further, we construe "statute[s] affecting federal jurisdiction . . . both with precision and with fidelity to the terms by which Congress has expressed its wishes." *Kucana v. Holder*, 558 U.S. 233, 252 (2010).

### B.

Determining if the district court had jurisdiction to consider the Moores' complaint requires us to examine the interplay between the APA and the INA, as well as our prior cases discussing those statutory provisions. Under the APA, an individual who is adversely affected by an agency action "is entitled to judicial review thereof," 5 U.S.C. § 702, with the exception that this express statutory grant of a cause of action does not "affect[] other limitations on judicial review" or "confer[] authority to grant relief if any other statute that

6

grants consent to suit expressly or impliedly forbids the relief that is sought," *id.* In sum, the APA authorizes suits "*except to the extent that*" "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a) (emphasis added). The APA thus "provide[s] a limited cause of action for parties adversely affected by agency action." *Lee v. U.S. Citizenship and Immig. Servs.*, 592 F.3d 612, 619 (4th Cir. 2010).[2]

The INA contains several limitations on when an individual can seek judicial review of immigration-related agency determinations under the APA. For example, 8 U.S.C. § 1252(a)(2)(B) provides that even if the APA or other federal law would grant federal courts jurisdiction to consider a particular claim,

> no court shall have jurisdiction to review--
>
> (i)  any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii)  any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.[3]

Notwithstanding this general jurisdiction-stripping language, the INA expressly authorizes *courts of appeals* to review "constitutional claims or questions of law raised upon a petition for review" in the context of removal proceedings. 8 U.S.C. § 1252(a)(2)(D) (stating that subsection (a)(2)(B) must not "be construed as precluding review of constitutional claims

---

[2] Here and throughout the opinion, we have omitted internal quotation marks, alterations, and citations except where otherwise noted.

[3] "[T]his subchapter" refers to Subchapter 2 of Chapter 12 of Title 8. Subchapter 2 covers immigration and spans 8 U.S.C. §§ 1151 to 1382.

7

or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section"). Of course, the Moores' complaint and subsequent appeal are not upon a petition for review.

In *Roland v. U.S. Citizenship and Immigration Services*, 850 F.3d 625 (4th Cir. 2017), we considered how these statutes operate together when considering whether the district court had jurisdiction to consider an APA challenge to USCIS's denial of an I-130 Petition. Unlike Mr. Moore, Roland filed an I-130 Petition *after* the enactment of the Adam Walsh Act's amendments to 8 U.S.C. § 1154. *Id.* at 627. USCIS denied his petition after performing its no-risk assessment. *Id.* at 627–28. After his I-130 petition was denied, Roland and his wife filed a claim under the APA in district court. *Id.* at 628. Seeking to avoid § 1252(a)(2)(B)(ii)'s jurisdictional bar, the Rolands asserted the district court had jurisdiction to consider the claim because "they [did] not seek review of the agency determination itself, but rather of the legal and constitutional issues [such as] the standard of proof and the administrative process in adopting the rules which the USCIS used[.]" *Id.*

Relying on the statutory language, we rejected the Rolands' attempt to distinguish between the types of decisions USCIS made as part of the no-risk determination. In particular, we observed that § 1252(a)(2)(B)(ii) states that "'no court shall have jurisdiction to review' certain discretionary actions or decisions" of USCIS and that § 1154(a)(1)(A)(viii)(I) gave USCIS "'sole and unreviewable discretion' to determine whether a petitioner poses no risk[.]" *Id.* at 629. Because the INA "specifically deems the no-risk determination as discretionary," we also concluded it stripped federal courts of the authority to review an agency decision unless another provision expressly authorized

8

review. *Id.* We then observed that although § 1252(a)(2)(D) "permit[s] judicial review of constitutional claims or legal questions" arising from that specific statutory authority, any such review is limited by the plain language of the statute to consideration "raised upon a petition for review filed with an appropriate court of appeals during removal proceedings." *Id.* Accordingly, no statute authorized review of USCIS's no-risk determination in the district court. *Id.* at 629–30.

We observed in *Roland* that our reading of the statutory language was consistent with our earlier decision in *Lee v. U.S. Citizenship and Immigration Services*, 592 F.3d 612 (4th Cir. 2010), in which we also considered "the jurisdictional limiting effect of 8 U.S.C. § 1252(a)(2)(B) on certain discretionary agency decisions." *Roland*, 850 F.3d at 630. *Lee* involved a different type of discretionary relief and we held the appellant's claim was barred by a different provision in § 1252(a)(2)(B). Specifically, Lee had petitioned "for adjusted status based on employment" under 8 U.S.C. § 1255. Section 1252(a)(2)(B)(i) specifically states that USCIS's judgments concerning relief under § 1255 are not subject to judicial review. *Id.* (citing *Lee*, 592 F.3d at 618–19). Under the plain language of the statute, we rejected the *Lee* petitioner's contention that "he merely challenged the eligibility determination rather than the denial [of his petition for adjusted status] as a whole, because such relevant determinations cannot be divorced from the denial itself." *Id.* (citing *Lee*, 592 F.3d at 620). Lastly, we observed that § 1252(a)(2)(B)'s "broad jurisdiction stripping provisions" were limited by § 1252(a)(2)(D), which "serve[d] as the exclusive means of judicial review of a legal issue related to the denial of an adjustment of status." *Id.* (citing *Lee*, 592 F.3d at 620–21).

9

C.

The Moores contend the district court erred in concluding that it lacked jurisdiction under § 1252(a)(2)(B)(ii). They posit that their claim does not fall under this jurisdiction-stripping provision because they are not challenging a decision that Congress committed to USCIS's discretion. Asserting they are unlike the petitioner in *Roland*, the Moores argue they are not challenging any aspect of USCIS's no-risk determination (which the statute leaves to USCIS's discretion). Instead, they assert that their claim is different because it challenges USCIS's non-discretionary decision to apply the amended version of § 1154 to Mr. Moore's I-130 Petition. The Moores contend that this threshold question as to which statute governs USCIS's review of the petition is a matter of congressional directive rather than USCIS discretion. As such, they argue that federal courts can review that decision without running afoul of § 1252(a)(2)(B)(ii).

We agree with the Moores that the INA does not prevent the district court from reviewing their claim. First, although § 1252(a)(2)(B)(i) ("Clause (i)") strips federal courts of jurisdiction to consider "any judgment regarding the granting of relief" sought under specific statutes, § 1154—which governs I-130 Petitions—is not one of the statutes listed. As such, Clause (i) does not deprive district courts of jurisdiction to consider USCIS handling of an I-130 Petition.

Second, the district court is not deprived of jurisdiction under § 1252(a)(2)(B)(ii) ("Clause (ii)"), which states courts cannot review "decision[s] or action[s]" Congress has specified are "in the discretion of" USCIS. However, Congress did not designate to

10

USCIS's discretion the decision of which version of § 1154 would apply to I-130 Petitions pending at the time the Adam Walsh Act amendments were adopted.[4]

In *Kucana v. Holder*, 558 U.S. 233 (2010), the Supreme Court reiterated that Clause (ii)'s text means only what it says—district courts lack jurisdiction "when Congress itself [has] set out the Attorney General's discretionary authority in the statute," and that neither silence nor an agency-promulgated regulation is sufficient to strip federal courts of jurisdiction under this provision. *Id.* at 247; *see also id.* at 249–51. In § 1154, Congress has designated only certain aspects of USCIS's review of I-130 Petitions to be within the agency's discretion. In both the original and amended versions of § 1154, USCIS retains "sole discretion" to determine "what evidence is credible and the weight to be given that evidence" in making a credibility determination as to the bona fides of the I-130 Petitions' contents. 8 U.S.C. § 1154(a)(1)(J). And in the amended version, USCIS has "sole and unreviewable discretion" in undertaking the no-risk determination. *Id.* § 1154(a)(1)(A)(viii)(I) and (a)(1)(B)(i)(I).[5]

Thus, although certain decisions or actions regarding I-130 Petitions have been committed to USCIS's discretion, nowhere is the decision of which version of the statute applies to the adjudication of pending petitions committed to that discretion. That query is entirely separate from any of the discretionary decisions cited above, and instead involves

---

[4] The statute refers to the Attorney General and the Secretary of the Department of Homeland Security, but 8 C.F.R. § 2.1 authorizes the Secretary to delegate those administration and enforcement duties. Responsibility for I-130 Petitions has been delegated to USCIS.

[5] There are two provisions designated by subclause (I), but this refers to the second one.

a question of USCIS's statutory authority: which version of § 1154 governs its consideration of Mr. Moore's I-130 Petition? *Contrast Lee*, 592 F.3d at 620 (stating that the question presented in that case "cannot be divorced from the denial [of relief] itself"). In an analogous situation in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that § 1252(a)(2)(B)(ii) did not strip the courts of jurisdiction. There, the Supreme Court noted that it had jurisdiction to consider the issue of "the extent of the Attorney General's authority under" a statute because that question did not "seek review of the Attorney General's exercise of discretion." *Id.* at 688. Similarly, the Moores do not seek review of USCIS's exercise of discretion within the evidentiary assessment or no-risk determination; rather, they asked the district court to consider the separate issue of whether USCIS used the correct statute to review Mr. Moore's I-130 Petition. As such, § 1252(a)(2)(B)(ii) does not strip federal courts of jurisdiction to consider that issue.[6]

---

[6] Two recent Supreme Court decisions acknowledging federal courts' jurisdiction despite jurisdiction-stripping language lend further weight to our conclusion. Although a majority of the justices in each case agreed that jurisdiction existed, a majority did not sign onto an agreed explanation of why that was so. Because the only relevant discussion appears in an opinion that did not garner a majority of the Court, that discussion offers only persuasive, but not binding, analysis. Yet in each case, Justice Alito, joined by Chief Justice Roberts and Justice Kavanaugh, noted courts had jurisdiction to consider the issue presented because it involved a question of statutory authority apart from the grant or denial of relief that the statute committed to the agency's discretion. *See Nielsen v. Preap*, 139 S. Ct. 954, 961–63 (2019) (Alito, J.) (issuing an opinion as to Sec. II addressing jurisdiction); *Jennings v. Rodriguez*, 138 S. Ct. 830, 839–41 (2018) (Alito, J.) (same) (concluding the Court had jurisdiction to consider a challenge to the statutory framework under which the Attorney General was operating because "the extent of the Government's detention authority [under the statute] is not a matter of discretionary judgment, action, or decision" subject to the jurisdiction-stripping language of 8 U.S.C. § 1226(e)). That same distinction applies in this case, as the Moores are not challenging how the agency exercised its discretion, but rather which version of the statute Congress intended the agency to use when adjudicating I-130 Petitions pending at the time the statute was amended.

It follows from this review of the applicable cases that § 1252(a)(2)(D) has no bearing on the analysis. As we have previously explained, in § 1252(a)(2)(D), "Congress explicitly allowed courts of appeals to retain a narrow window for jurisdiction to review under that section, despite otherwise stripping jurisdiction under Section 1252(a)(2)(B)." *Roland*, 850 F.3d at 630. Thus, § 1252(a)(2)(D) is inapplicable unless § 1252(a)(2)(B) has been triggered. Given that § 1252(a)(2)(B) does not strip the court of jurisdiction over the Moores' claim, § 1252(a)(2)(D) does not apply.

Neither *Roland* nor *Lee* compels a different conclusion as to the proper interpretation of § 1252(a)(2)(B)(ii) or the court's jurisdiction in this case. Although both cases observed that § 1252(a)(2)(D) "serve[d] as the '*exclusive* means of judicial review of a legal issue related to the denial of an adjustment of status,'" the context for that discussion supports our understanding that § 1252(a)(2)(D) applies only when the jurisdiction-stripping provisions of § 1252(a)(2)(B) had already been invoked. Indeed, it was only *after* the Court concluded that § 1252(a)(2)(B)(i) or (ii) applied to the issue raised on appeal that the Court considered whether § 1252(a)(2)(D) affected the analysis. *Roland*, 850 F.3d at 629–30; *Lee*, 592 F.3d at 619–20.

Further, the petitioner in *Roland* filed his I-130 Petition *after* enactment of the Adam Walsh Act's amendments, so no question arose as to which version of the statute applied for USCIS review. 850 F.3d at 627. Instead, Roland challenged various aspects of the agency's no-risk determination and sought to create a line between legal questions about that determination and factual questions about it. In rejecting that argument, the Court pointed to the statutory language committing the no-risk determination unconditionally to

13

the discretion of USCIS. *Id.* at 629. The Moores raise a different sort of legal question, one entirely apart from the no-risk determination's legal framework or factual assessment. *Roland* is thus inapposite.

*Lee* is likewise distinguishable. The appellant in that case was seeking an adjustment of status under § 1255, which is one of the statutes listed in § 1252(a)(2)(B)(i). The Court in *Lee* looked to the type of petition at issue in the case, determined that it was listed in § 1252(a)(2)(B)(i), and concluded that specific statutory provision "closes the door to judicial review of certain discretionary decisions, including the denial of an application for adjustment of status" under § 1255. *Lee*, 592 F.3d at 619; *see also Kucana*, 558 U.S. at 247–48 (describing "the character of the decisions Congress enumerated in § 1252(a)(2)(B)(i)" as "substantive decisions . . . made by the Executive in the immigration context as a matter of grace," including "waivers of inadmissibility based on certain criminal offenses, § 1182(h), or based on fraud or misrepresentation, § 1182(i); cancellation of removal, § 1229b; permission for voluntary departure, § 1229c; and adjustment of status, § 1255"). However, I-130 Petitions filed under § 1154, like the Moores', are not listed in § 1252(a)(2)(B)(i), so the Court's jurisdiction is not determined by that statute.

In sum, we conclude that the district court erred in dismissing the complaint for lack of jurisdiction. The APA authorized the Moores' claim and § 1252(a)(2)(B) did not strip the court of jurisdiction to determine whether I-130 Petitions pending at the time the Adam Walsh Act amended § 1154 should be processed by USCIS under the former or amended

14

version of the statute. The district court thus had jurisdiction to consider that threshold question and so do we.

## III.

Despite the district court's erroneous conclusion about its jurisdiction, under well-established precedent, we can affirm its decision to dismiss the complaint on any ground apparent on the record. *See Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 660 (4th Cir. 2004) ("[W]e may affirm the dismissal by the district court on the basis of any ground supported by the record even if it is not the basis relied upon by the district court."). In its motion to dismiss, USCIS also asserted that the Moores' complaint failed to state a claim because USCIS correctly used the amended version of § 1154 when adjudicating pending I-130 Petitions such as Mr. Moore's. Given that this is a question of statutory interpretation and because both parties fully briefed this substantive legal issue on appeal, we will proceed to consider that issue rather than remanding for the district court's consideration in the first instance.

When determining whether Congress intended for the Adam Walsh Act amendments to § 1154 to apply to pending I-130 Petitions, we first assess whether Congress "expressly prescribed the statute's proper reach." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). "If there is no congressional directive on the temporal reach of a statute, we determine whether the application of the statute to the conduct at issue would result in a retroactive effect. If so, then in keeping with our traditional presumption against

15

retroactivity, we presume that the statute does not apply to that conduct." *Martin v. Hadix*, 527 U.S. 343, 352 (1999).

## A.

The Moores contend that the amended version of § 1154 should not have been applied to I-130 Petitions (like theirs) pending at the time the Adam Walsh Act was enacted. They point to the language in §1154(a)(1)(A)(i), which says certain U.S. citizens "may file" an I-130 Petition, as support that the amendments restricted only the filing of new petitions and did "not give the [USCIS] new authority to deny any previously filed petitions." Opening Br. 18. The Moores caution that by applying the amended language retroactively, USCIS has violated the equal protection rights of petitioners who filed their petitions on the same day, but yet have their petitions adjudicated under different standards depending on when USCIS made its determination. Lastly, the Moores assert that because Congress did not clearly indicate that the amendments should be applied retroactively, it would be unfair to apply the amendments to pending petitions because it upsets the expectations of petitioners.

USCIS responds that it properly applied the Adam Walsh Act's amendments when adjudicating Mr. Moore's I-130 Petition. It points first to the irrationality of reading Clause (i) to literally restrict individuals from filing a new petition when the statute as a whole is more naturally read to regulate the process by which USCIS approves I-130 Petitions. Pointing to Clause (i)'s cross-reference to Clause (viii) as supporting the view that individuals with a qualifying conviction are not prohibited from filing, USCIS contends a petitioner may be prohibited from having their petitions approved depending on the

16

outcome of USCIS's no-risk determination. The agency also points to the administrative law principle that applications for relief are considered "continuing applications" that must demonstrate eligibility for relief under the facts and law applicable at the time of the agency determination, not just the time filed. Lastly, USCIS asserts the Moores' retroactivity, equal protection and expectation arguments fail because there's no proof that Mr. Moore's I-130 Petition was treated any differently from similarly situated individuals and whenever a new law is enacted, individuals are held to that new standard regardless of their prior expectations.

B.

In matters of statutory interpretation, "the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms," *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004), and when "assessing for plain meaning, we do not consider statutory phrases in isolation; we read statutes as a whole," *United States v. Mitchell*, 518 F.3d 230, 234 (4th Cir. 2008). The Moores' textual argument improperly isolates Clause (i) from the statute as a whole.

The Moores would have us read Clause (i) in isolation to conclude that it restricts *filers* of I-130 Petitions rather than USCIS's review of filed petitions. But Clause (i) must be read alongside the other provisions of § 1154 not only because that is the proper way to understand a statute's meaning, but also because Clause (i) contains an explicit cross-reference to Clause (viii). Clause (i), which says "[e]xcept as provided in clause (viii), any citizen . . . may file a petition," must be read and understood in tandem with Clause (viii), which states:

17

> Clause (i) shall not apply to a citizen of the United States who has been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition described in clause (i) is filed.

Clause (viii) plainly provides that USCIS must make a no-risk determination for I-130 Petitions *filed* by petitioners who have a qualifying conviction, and that this determination must be made *before* those I-130 Petitions are eligible to continue on the course contemplated in Clause (i). In other words, Clause (i) and Clause (viii) added a preliminary step to USCIS's review of some I-130 Petitions. And Clause (i)'s ordinary procedure is limited to I-130 Petitions filed by individuals without a qualifying conviction and by individuals with a qualifying conviction and USCIS's approval upon determining the U.S. citizen poses no risk. The amendments do not bar who can file an I-130 Petition, but rather direct USCIS's review of an I-130 Petition. Thus, the Moores' textual argument against applying the Adam Walsh Act's amendments to I-130 Petitions pending at the time of their adoption fails.

This conclusion is confirmed by the holding of the Ninth Circuit, the only other circuit court to have considered whether USCIS properly construed the Adam Walsh Act amendments to § 1154 as applying to I-130 Petitions pending at the time of their enactment. While our reasoning rests on a slightly different analysis than the Ninth Circuit's, we agree with that court's determination that

> Congress did not enact [§ 1154's amendments] to bar certain citizens from placing pieces of paper in front of an agency for processing. Rather, when Congress declared that "Clause (i) shall not apply," Congress was expressing its judgment that citizens convicted of certain offenses may not, unless stringent conditions are met, benefit from the petitioning framework

18

described in Clause (i). In keeping with that goal, the Adam Walsh Act provision amending the INA is described as "barring convicted sex offenders" not from *filing* petitions, but "from having family-based petitions approved."

. . . . [I]f Clause (viii)(I) barred citizens convicted of a specified offense against a minor from filing a petition *at all*, the Secretary could never make the kind of risk determination that the Adam Walsh Act requires.

*Gebhardt v. Nielsen*, 879 F.3d 980, 985–86 (9th Cir. 2018). At bottom, nothing in the text of the amendments indicates that Congress did not intend for them to apply to pending I-130 Petitions.[7]

We also reject the Moores' assertion that applying the amended version of § 1154 to pending I-130 Petitions would have an impermissible retroactive effect. "A statute does not operate retrospectively merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf*, 511 U.S. at 269. To have retroactive effect, the statute must "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280. None of these indicia of retroactive effect exists in this case.

The Moores improperly focus on when Mr. Moore filed his I-130 Petition, but in this context the proper inquiry is what law applied at the time the *agency* ruled on his

---

[7] Our holding also aligns with the BIA's description of the Adam Walsh Act's amendments to § 1154:

[S]ection 402(a)(2) of the Adam Walsh Act amended section 204(a)(1) of the [INA], 8 U.S.C. § 1154(a)(1), by adding a provision barring a United States citizen who has been convicted of a specified offense against a minor *from having a family-based visa petition approved* unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien beneficiary.

*Matter of Tatiana Aceijas-Quiroz*, 26 I. & N. Dec. 294, 295–96 (BIA 2014) (emphasis added).

petition. Mr. Moore's I-130 Petition had been filed, but the agency had not yet approved or rejected it, when the statutory amendments came into effect. The amendments were not applied retroactively to a past decision or concerning past eligibility, but rather were applied to a then-pending decision regarding current eligibility for the requested relief. The amendments altered how Mr. Moore's I-130 Petition would be reviewed and approved, but "d[id] not infringe on a right that he possessed prior to [their] enactment," increase his liability for any past act, or otherwise affect a *completed* transaction. *See Appiah v. U.S. I.N.S.*, 202 F.3d 704, 709 (4th Cir. 2000).

In undertaking its review of Mr. Moore's I-130 Petition, USCIS was charged with applying whatever rules currently governed that review. This is so because applications for agency relief such as an I-130 Petition are considered "continuing applications," meaning that the agency must determine whether to approve them on the basis of the facts and law as they exist at the time the decision is made as opposed to the time when the application is filed. *E.g.*, *Matter of Alarcon*, 20 I. & N. Dec. 557, 562 (BIA 1992) ("An application for admission to the United States is a continuing application, and admissibility is determined on the basis of the facts and the law at the time the application is finally considered. When a law is changed before a decision is handed down by an administrative agency, the agency must apply the new law. If a statutory amendment renders an individual ineligible for adjustment of status prior to a final administrative decision on the previously filed application for relief, the application must be denied."). This understanding of agency review flows from the Supreme Court's observation that "a change of law pending an administrative [determination] must be followed in relation to permits for future acts.

20

Otherwise the administrative body would issue orders contrary to the existing legislation." *Ziffrin, Inc. v. United States*, 318 U.S. 73, 78 (1943); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 418–19 (1971) (stating that administrative regulations issued during the pendency of a case should be used to decide a dispute). USCIS thus acted appropriately when it relied on the amended version of § 1154 to review Mr. Moore's I-130 Petition.

The Moores' remaining arguments also lack merit. It was not "arbitrary treatment"—i.e., an equal protection violation—for USCIS to apply then-applicable law to pending I-130 Petitions. *See* Opening Br. 23; *see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 213 (1995) (recognizing that the Fifth Amendment's due process clause contains an equal protection component that "provide[s] some measure of protection against arbitrary treatment by the Federal Government"). Absent evidence of an invidious motive giving rise to the delay—which has not been alleged here—that different laws applied to different petitions depending on the time each was decided cannot give rise to an equal protection violation. *See Johnson v. Robison*, 415 U.S. 361, 364 n.4 (1974) (discussing the scope of the Fifth Amendment's equal protection clause). Similarly, as we previously explained, in *Landgraf*, the Supreme Court "emphasized that a statute does not operate retroactively merely because it upsets expectations based in prior law." *Appiah*, 202 F.3d at 709. "Even uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct[.]" *Landgraf*, 511 U.S. at 269 n.24. But that prospect "is not a reason for declining to apply a statute to a pending case." *Appiah*, 202 F.3d at 709.

21

IV.

For the reasons provided, we hold that although the district court had jurisdiction to consider the Moores' claim, it did not err in dismissing their complaint because their claim fails as a matter of law.

*AFFIRMED*