# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 20, 2020

Lyle W. Cayce
Clerk

No. 18-60706
Summary Calendar

Kefali Teame Berhe,

*Petitioner*,

*versus*

William P. Barr, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A212 997 030

ON PETITION FOR REHEARING

Before Wiener, Haynes, and Costa, *Circuit Judges*.

WIENER, Circuit Judge:*

Petitioner Kefali Teame Berhe seeks rehearing of this panel's decision affirming the Board of Immigration Appeals' ("BIA") conclusion that he is

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 18-60706

ineligible for asylum and withholding of removal. Berhe contends the panel failed to address his contention that the BIA (1) applied the wrong standard of review and (2) erred in finding that he did not have a well-founded fear of future persecution based on his illegal departure from Eritrea. We grant rehearing and withdraw our prior opinion, *Berhe v. Barr*, 810 F. App'x 318, 319 (5th Cir. 2020), substituting the following in its place.[1]

## I. BACKGROUND

Berhe is an Eritrean citizen who served in the Eritrean National Service for approximately ten years before arriving in the United States. He was paid roughly twenty-five dollars a month for his service, but payments ceased when he was instructed to enroll in a mechanical engineering program at the Eritrean Institute of Technology. Although Berhe complained to an Eritrean Ministry of Education official about the lack of pay, he continued to attend school for about a year, until he and dozens of other similarly situated members of the national service began to boycott classes. At a meeting with Ministry of Education officials, Berhe demanded that he and his colleagues be paid in full or released from national service. The students were told that working toward their advanced degrees without compensation was their duty because they were not directly participating in Eritrea's war for independence. The students were instructed to sign a paper indicating their refusal to attend school without compensation; Berhe and seventy-two other students signed the document. Unable to support his family without compensation, Berhe left school and sought to return to his active military unit but was told by his supervising officer to return home and await further orders.

---

[1] Judge Haynes disagrees and would deny the petition for rehearing.

No. 18-60706

Shortly after returning home, Berhe was arrested by Eritrean soldiers and imprisoned for six months without being charged with a crime. While in prison, Berhe was interrogated on multiple occasions about his opposition to the government and was at least once "hit in the stomach, tied so that his arms and legs were lashed together behind his back, and left face-down in the mud for roughly two hours." While being transported to a new prison facility, Berhe fled, seeking refuge in a relative's home before traveling to Sudan, Israel, Burundi, Uganda, Ethiopia, Brazil, and ultimately the United States.

The Department of Homeland Security ("DHS") served Berhe with a Notice to Appear shortly after his arrival in the United States. Berhe conceded removability but sought asylum and withholding of removal under both Section 241(b)(3) of the Immigration and Nationality Act ("INA") and the Convention Against Torture ("CAT"). The Immigration Judge ("IJ") found that Berhe was ineligible for asylum or withholding of removal under the INA because he had not demonstrated that he was punished on account of his political opinion. The IJ instead characterized Berhe's protest as a "personal 'pay dispute'" and concluded that any retaliation Berhe suffered as a result of his opposition to the government's compensation policy was not the result of his political persuasion but of the government's interest in enforcing military discipline. With respect to Berhe's well-founded fear of future persecution contention, the IJ explained that although Berhe "might be subject to penalties for violating Eritrea's travel laws," such penalties would not rise to the level of persecution.[2]

---

[2] The IJ nevertheless granted Berhe's petition for CAT relief on the basis that Berhe would more likely than not be tortured if he returned to Eritrea because he deserted the military and fled the country without permission.

The BIA affirmed, finding that Berhe had not established that he had suffered past persecution because the government's actions were designed to maintain order and discipline rather than punish Berhe for his political opinion. The Board also agreed that punishment for violation of Eritrea's travel laws would not constitute persecution.

Berhe appealed, claiming that the BIA erred in finding that he had neither suffered past persecution nor established a well-founded fear of future persecution. The panel denied Berhe's petition for review, explaining that the BIA's decision was supported by evidence that Berhe was persecuted not for his political opinion but for military disobedience and a desire to maintain order. *Berhe*, 810 F. App'x at 319. The panel did not specifically address Berhe's claim regarding fear of future persecution.

## II. PETITION FOR REHEARING

Berhe contends that the panel's original opinion overlooked two dispositive issues, proper consideration of both of which require remand to the BIA. First, Berhe contends that the panel failed to address the BIA's incorrect application of an "either-or" analysis when deciding that he was punished not for his political opinion but for military insubordination. Berhe asserts that the panel failed to consider that his punishment could stem from both a desire to maintain order *and* retaliation for political opposition.

Second, Berhe urges that the panel neglected to consider whether he had established a well-founded fear of future persecution based on his illegal departure from Eritrea. Specifically, Berhe stresses that Eritrea has strict travel laws and notes that any related punishment would inevitably be "on account of" his political opinion because the government believes him to be an organizer of political opposition.

In opposition to panel rehearing, the government contends that affirmance was appropriate because the BIA properly concluded that Berhe was

punished for apolitical reasons and that the BIA and IJ were not required to consider any evidence of mixed motives under *Milat v. Holder*, 755 F.3d 354 (5th Cir. 2014). The government further avers that any oversight by the panel with respect to Berhe's future-persecution claim was harmless because Berhe had not produced any evidence demonstrating that punishment for the violation of Eritrea's travel laws would be motivated by his political opinion.

## III. LEGAL STANDARD

The BIA's factual findings are reviewed for substantial evidence, *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009), and its legal conclusions are reviewed de novo, *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012). With respect to factual issues, reversal is warranted only if "the evidence was so compelling that no reasonable factfinder could conclude against it." *Wang*, 569 F.3d at 537. "The errors or other failings of the immigration judge's opinion are considered only if they have some impact on the BIA's decision." *Abdel-Masieh v. U.S. I.N.S.*, 73 F.3d 579, 583 (5th Cir. 1996).

## IV. ANALYSIS

The Immigration and Nationality Act authorizes the Attorney General to grant asylum to a "refugee," which the statute defines as any person "who is unable or unwilling to return" to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The applicant must demonstrate that one of these five enumerated characteristics "was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). Because "the nexus requirement is not an 'either-or' proposition," a court must consider the existence of multiple motives for the persecutor's actions, when evidence of such mixed motives exists. *Ontunez-*

No. 18-60706

*Tursios v. Ashcroft*, 303 F.3d 341, 349 (5th Cir. 2002); *see also Rivas-Martinez v. I.N.S.*, 997 F.2d 1143, 1148 (5th Cir. 1993) (remanding to BIA for consideration of mixed motives). "[A]lthough a statutorily protected ground need not be the only reason for harm, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Cabrera v. Sessions*, 890 F.3d 153, 159 (5th Cir. 2018) (quoting *Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 383 (5th Cir. 2016)).

Berhe contends that the BIA, which affirmed the IJ with little analysis, failed to employ a mixed-motive analysis.[3] On further consideration, we agree. Although the IJ cited the mixed-motive standard in his recitation of the applicable law, he neglected to consider whether Berhe's insubordinate act of boycotting classes had a political dimension that affected his punishment. Without analyzing whether Berhe's boycott broadcasted a political opinion, the IJ characterized Berhe's act as a "personal 'pay dispute'" and explained that "[p]unishment by a military superior for refusal to follow orders is not persecution under the Act."[4] But Berhe did not speak

---

[3] The government concedes that the IJ and BIA neglected to conduct a mixed-motive analysis but insists that such analysis was not necessary under this court's ruling in *Milat v. Holder*. This contention is misplaced. *Milat* held that punishment for evading military conscription does not constitute persecution unless the asylum applicant can show that either "(1) the penalty imposed would be disproportionately severe on account of a protected ground, or (2) the applicant would be required to engage in inhumane conduct as part of military service." 755 F.3d at 361. As an initial matter, Berhe's claim of past persecution has nothing to do with evasion of military conscription; in fact, Berhe sought to *rejoin* his active military unit after leaving school. Even if *Milat* were applicable, it is distinguishable as Milat could not show evidence of disproportionate treatment on account of his political opinion because there was no evidence that his political opinion was ever known to his persecutors. In contrast here, Berhe presented evidence that he voiced his political opinion to government officials and was interrogated about those opinions while in prison. The record further reflects that the government harassed Berhe's wife about her husband's opposition activity after he had escaped from prison.

[4] The IJ cites unpublished or out of circuit cases for this proposition that are distinguishable from Berhe's case. For example, in *Fessehaye v. Holder*, an Eritrean citizen

back to an officer or fight with a fellow service member—acts that could easily be characterized as mere insubordination. He instead took issue with a government policy, challenged that policy, and encouraged others to do the same. By failing to address the arguably political nature of the protest and ensuing punishment—which involved six months of imprisonment, multiple interrogations about Berhe's opposition to the government, and degrading treatment—the IJ and BIA's opinions risk implying that punishment for military insubordination can *never* constitute persecution on account of a protected ground—an obviously erroneous result. Consequently, remand is appropriate.

In so remanding, this panel does not intend to suggest that Berhe necessarily *was* persecuted on account of his political opinion, but merely that it was an error for the IJ to characterize Berhe's punishment as apolitical without first analyzing whether the punishment was motivated at least in part by a protected ground. It is conceivable that the IJ considered the relevant evidence and concluded that the political dimension of Berhe's protest had

---

failed to show past persecution on account of his political opinion because there was evidence that "after his arrest . . . he was told his detainment was for improperly speaking out of turn to his commander in a meeting." Here, in contrast, Berhe presented evidence that, while he was imprisoned, he was interrogated about his involvement in a protest "meant to oppose the government." The IJ also relied on *Sleman v. Holder*, in which the court noted that the applicant's "testimony does not compel the conclusion that he was mistreated in the army due to his political or religious beliefs, rather than disciplined for his insubordination." 365 F. App'x 828, 829 (9th Cir. 2010). However, the opinion does not detail the applicant's insubordinate acts or the punishment he received. The case is accordingly of little value in this analysis. Lastly, the IJ cited *Ntamack v. Holder*, 372 F. App'x 407, 411 (4th Cir. 2010), but in that case the court never discussed the BIA's finding with respect to past persecution on account of political opinion, except for noting that the BIA had concluded that the applicant had been punished for military insubordination rather than for his suspected political opinions.

no bearing, or at most a tangential or incidental bearing, on the punishment he received. But the IJ failed to make such a determination clear.

The IJ and BIA's failure to consider the arguably political dimension of Berhe's punishment sullies its conclusions with respect to Berhe's well-founded fear of future persecution as well. Berhe contends that the panel failed to review the BIA and IJ's conclusion that he would not be persecuted for violating Eritrea's travel laws by leaving the country without permission. On this issue, the IJ noted without factual analysis that such punishment would not rise to the level of persecution. The BIA affirmed, acknowledging that there was some evidence of travel restrictions and related punishment, but that "the respondent has not persuaded us that the Immigration Judge erred in determining that any punishment would not be persecution on account of a protected ground in the Act." The error here, however, lies in the fact that neither the IJ nor the BIA considered the fact that Berhe might be punished not merely for illegally leaving the country but in retaliation for his political expression on his return.

We **REMAND** to the BIA for consideration of the deficiencies identified above.